# KIRKSEY ET. AL. *vs.* FRIEND.

[BILL IN EQUITY BY HUSBAND AND WIFE, TO HAVE INDEMNIFYING BONDS GIVEN TO THE SHERIFF, TO INDUCE HIM TO LEVY ON AND SELL, UNDER EXECUTION, AGAINST THE HUSBAND, PROPERTY CLAIMED BY THE WIFE, AND UNDER WHICH THE PROPERTY WAS SOLD, DECREED TO BE EQUITABLE ASSETS OF THE SHERIFF AND TO COMPEL THE OBLIGORS THEREIN TO CONTRIBUTE PRO RATA, &C., TO THE PAYMENT OF A DECREE OF THE CHANCERY COURT AGAINST THE SHERIFF, HE BEING INSOLVENT, IN A SUIT IN CHANCERY, GROWING OUT OF AND SETTLING THE RIGHTS IN THE SAID PROPERTY OF THE WIFE SOLD BY THE SHERIFF, &C.]

1. *Decree of court held during rebellion; when collection of, will be enforced in present State courts.*—Mrs. F. and her husband, on the 17th day of June, 1861, obtained a decree in a chancery court, held under the rebel authority, in the county of Greene, in this State, for the use of Mrs. F., as her separate estate, under the will of her father, made in 1838, against O., sheriff, for an improper levy and sale of her property, for $5,227.48. On this decree execution was issued, and returned "no property found" against O., who was insolvent,—*Held*, that a court of chancery will entertain jurisdiction to enforce the collection of said decree, in the name of the husband and wife in a proper case, as for her separate estate at common law, when the marriage was before our statute upon the separate estate of wife.

2. *Indemnifying bonds; when not void; when chancery will entertain jurisdiction to compel obligors on, to contribute pro rata, &c.*—O., as the sheriff of said county of Greene, having numerous executions on judgments at law against F., was induced by the parties interested in said executions to levy the same on property belonging to Mrs. F., wife of F., as her separate estate at common law, which property was sold by the sheriff under said levies, and the proceeds applied to the satisfaction of said judgments against the husband; but before the levy and sale, and in order to induce the sheriff to seize and sell said property of the wife, the parties interested in said judgments executed to the sheriff sundry bonds, for the purpose of indemnifying him against liability to Mrs. F. for making such levy and sale, in the event that the property thus seized turned out to be her property, and not subject to said executions, thus in the hands of said sheriff,—*Held*, that the bonds thus executed were not void, whether they were made as statutory bonds to indemnify the sheriff, or bonds at common law, if there was doubt as to the title of the property, proposed thus to be levied on, which rendered it liable to satisfy said executions, and that Mrs. F. and her husband might file her bill in chancery to compel the obligors to said bonds to contribute *pro rata*, in proportion to the

Kirksey et al. v. Friend.

amounts of the several penalties of said bonds, to the payment of her decree against said sheriff for the improper seizure and sale of her separate property under said executions, thus induced to be made by them through the agency of said sheriff, her decree being that of a rebel court, on which it is doubtful whether any process of garnishment can be issued to aid in its collection.

3. *Indemnifying bonds in present case; when condition of was broken.*—The condition of said bonds was broken as soon as there was a *liability* fixed against the sheriff in favor of Mrs. F. by decree in her favor, which the obligors in said bonds refused to pay.

·APPEAL from the Chancery Court of Greene.
Heard before Hon. A. W. DILLARD.

The facts are sufficiently stated in the opinion.

J. T. JONES, for appellant.
ROBT. H. SMITH, *contra.*

[No briefs came into the hands of the Reporter.]

PETERS, J.—This is a suit in chancery, commenced by Ann V. Friend and her husband, John G. Friend, on the sixth day of January, 1868. John G. Friend, the husband, has died since the bill was filed, and the cause has proceeded in the name of Mrs. Friend alone. There are seven paragraphs in the bill, which, among other things, recite, but not in the order of the pleading, that Mrs. Friend and her said husband sued William C. Oliver, former sheriff of Greene county, in this State, in the chancery court of said county of Greene, on the twenty-seventh day of February, 1856, for a wrongful seizure and sale of certain cotton and wagon, the separate property of Mrs. Friend, derived from the will of her father, Henry Minor, deceased, who died in 1838. The cotton and wagon above mentioned had been seized by said Oliver, as such sheriff, as the property of said John G. Friend, in November, 1853, under sundry executions then in the said sheriff's hands, against said John G. Friend. In the suit thus commenced in 1856, by Mrs. Friend and her said husband, against Oliver, a final decree was rendered by the chancel-

lor in favor of the complainants, by which it was ordered, adjudged and decreed "that the defendant (said Oliver) pay to the plaintiffs, for the use of the plaintiff, Ann V. Friend, and as of her separate estate, under the last will and testament in the bill mentioned, the sum of $5,227.48," and "interest thereon from the 17th day of June, 1861, until paid." This decree bears date the 22d day of June, 1861, and execution was issued thereon against said Oliver and regularly returned "no property found." It is also alleged that Oliver is insolvent in law and in fact. The bill in this case further recites that said decree remains wholly unpaid and in full force. It is also shown that Oliver, as such sheriff as aforesaid, at or before he made said seizure and sale of said cotton and other property, levied on as the property of said John G. Friend, had in his hands for execution various *fi. fas.* against said John G. Friend and others, in favor of sundry judgment creditors, who are all particularly named in the bill; and that these creditors, and certain of the sureties of said John G. Friend, who were his co-defendants in certain of said judgments on which said *fi. fas.* were issued, desired said sheriff to levy on said cotton and other property named in the bill, as the property of said John G. Friend, but said sheriff, being doubtful about the title, was unwilling to make such levy and seizure of said cotton and other property under authority of said writs of *fi. fa.*, unless the several parties interested therein would first give to him bonds of indemnity therefor. Thereupon, the bonds required were executed and delivered to said Oliver as such sheriff. They all bear date in November, 1853. There are eleven of them, and they are made exhibits to the bill. The condition of one is cited below as an example of all the rest. It is in these words: "Now, therefore, if the said John C. Johnson and his said securities shall and will pay, and truly indemnify and save harmless, protect and defend said William C. Oliver, sheriff of Greene county as aforesaid, from and against all loss, liability, damage and expense he may incur or sustain or be

put to by reason of the said above-named levy, or any levy and sale he may make of the said property, or any part thereof, then this bond shall be null and void, but otherwise in full force and effect." Said Johnson is an obligor in three of said bonds. One is given by him as the surety of said John G. Friend in sundry judgments mentioned therein. Two others are given by him as a judgment creditor of said John G. Friend, and Kirksey and Coleman are his sureties, and the penalty of these bonds is above $24,000. One of the bonds of LaFayette M. Minor is also given by him as the surety of said John G. Friend, on the contracts in judgments against them. The other bonds are indemnifying bonds, such as are given to the sheriff when reasonable doubt exists as to the title and liability of the property sought to be seized under execution against the judgment debtor. The penalty of all these bonds is above $30,000. The bill also alleges a fraudulent conveyance of certain lands by Johnson, and a fraudulent concealment of effects by Oliver, for the purpose of preventing Mrs. Friend from procuring satisfaction of her decree against Oliver, and prays a discovery. All the parties to the bonds are made defendants to the bill, who were in life at the date of the commencement of the suit; and the bill concludes with a prayer for general relief, and that the bonds aforesaid be treated as equitable assets of said Oliver, and subjected to the satisfaction of Mrs. Friend's said decree. There are several demurrers to the bill, but they merely assail its equity, and it is needless to set out the special grounds upon which they rest. At the hearing, the chancellor overruled the demurrers, and decreed the relief asked, and ordered an account to be taken by the register, so as to apportion the sums to be paid by each set of obligors in said bonds *pro rata*, according to the amount of the penalty of each bond. From this decree the defendants below appeal to this court.

The property of Mrs. Ann V. Friend, which this litigation seeks to restore to her, is the amount of money decreed to be paid her by the judgment in the chancery suit

against Oliver, commenced in 1856, which judgment was rendered on the 22d day of June, 1861, for the sum of $5,227.48. This decree is not void, but is entitled to such validity as should be given to the decree of a court of a foreign government.—*Martin v. Hewitt*, 44 Ala. 418. It is *prima facie* correct, and is, so far, to be considered final, that it must be shown to be wrong on the merits, or that the court acted without jurisdiction, before it can be altered or disregarded.—Story Confl. L. § 608. This decree fixes the character of Mrs. Friend's estate, in the recovery, to be her separate property, derived from the will of her father, Henry Minor, who died long before the promulgation of the Code and the statutes therein referred to, which regulate the estates of married women in this State. This decree is not assailed as a judgment wrong upon the merits, or for want of jurisdiction. It is, therefore, sufficient until so assailed. Her estate in the moneys thus decreed to her is a separate estate at common law, and not an estate under the Code, regulating the property of the wife.—*Friend v. Oliver*, 27 Ala. 532. As such, she was authorized to go into a court of chancery, either with or without her husband, if he refused to join her in the suit, to seek enforcement of her rights, whatever they might be. She could not sue at law.—*Pickens and wife v. Oliver*, 29 Ala. 528. This suit, then, was brought in the proper forum.

It is urged by the learned counsel for the appellants, that the bonds of Johnson and LaFayette M. Minor are invalid ; that they are not such bonds as are authorized by the statute for the purpose of indemnifying the sheriff against the consequences of an improper levy, when there are reasonable doubts as to the titled liability of the property proposed to be seized under the execution, and consequently they are wholly unauthorized, without consideration and void. From the facts of this case, this does not necessarily follow. Johnson and Minor were the sureties of John G. Friend on the contracts in judgment against them, before the judgments were rendered. This entitled them to make application to the sheriff to levy on

Kirksey et al. v. Friend.

the property of the principal first. It is true, that the statute points out how this may be done, by filing with the sheriff the affidavit of the surety as required by the statute.—Rev. Code, § 2862; Code, § 2448. But if the parties choose to adopt a different mode to enforce this right, and one not forbidden by law, or immoral, or repugnant to the public policy of the State, or the general government, I see no reason why they may not be allowed to pursue it. When the parties are competent, the right to enter into contracts of all kinds is unlimited, except some law forbids them.—1 Pars. Contr. § 4. It is, however, said that these bonds are unlawful, because they were given without authority of the statute to induce the sheriff to do an unlawful act. But it seems that this is not a just inference from the facts. Much of the property sought to be made liable to the levy, turned out to belong to John G. Friend, the defendant in the executions, and only the cotton, which was part of it, proved to be the separate property of Mrs. Friend, and the liability of all of it to satisfy the executions was thought to be reasonably doubtful. It was to settle this doubt as to all the property pointed out to the sheriff, that the bond was given. It was competent to settle this, under the levy, and to take the means to do so was not an illegal act. Johnson and Minor were both deeply interested in having this done. It is true that it was not done in the ordinary way, but at the same time, it was not illegally done. The plaintiffs in those judgments could have done it in the same way, without a violation of law. Otherwise, indemnifying bonds would be worthless, if the property seized under the execution should happen to be not subject to the levy.—Rev. Code, § 2858; Code, § 2444; *ib.* § 3016, *et seq.*; Code, § 2587. I see no valid reason, therefore, why the same thing that is made compulsory by the statute between the plaintiff and the sheriff, may not be allowed to be done on agreement between the sheriff and a surety-defendant, with a view of reaching the same end. A legal thing may always be done in a legal way. This is the effect of that principle of universal jus-

tice that gives a remedy where there is a right.—Broom's Max. 91, marg. Here, Johnson and Minor each expected a benefit from their contracts—their bonds—and they stipulated for a benefit and doubtless received it; and the sheriff incurred a heavy liability at their requests. This is a sufficient consideration to support such contracts at common law.—1 Pars. Contr. sec. 11, p. 67–8; 1 ib. p. 430, 431. It may be said that the sheriff was bound to do what he did do, without the bonds, but he was not bound to act without an affidavit required by the statute, in favor of the surety-defendants in the executions in his hands for levy and satisfaction, unless · he chose to act upon a special agreement with such surety-defendants. This latter course, by agreement, they chose to pursue. I therefore feel bound to hold that these contracts are sufficient as common law agreements, and bind the parties to perform them. The other bonds of the plaintiffs in the judgments, on which the executions had been issued, were simply bonds of indemnity to the sheriff, and are good under the statute.—Rev. Code, § 2858; Code, § 2444.

But the novelty, and the chief difficulty in this case, is the point next to be considered. It is this: Is Mrs. Friend entitled, in this way, to resort to the bonds aforesaid in order to enforce the collection of her decree against Oliver of the 22d of June, 1861, for $5,227.48? She is not a party to these bonds, and they have not been assigned or transferred to her by the sheriff. But they were given, in part at least, in order to subject property claimed by her to the use of the obligors, by a sale under the executions against them. The benefit that they expected was to come from her. She, in effect, furnished the consideration which, by operation of law, passed to them. The sheriff was a mere agent, engaged in executing a power for the benefit of the parties to the judgments. The bonds were not given to him for his private profit, or to enable him to convert the property of Mrs. Friend to the use of the obligors in the bonds, but to furnish him with the means of indemnifying her, in the event that the property seized

Kirksey et al. v. Friend.

proved to belong to her. If it turned out that she was not in fact injured, then the condition of the bonds were not broken. Had there been a deposit of the money, named in the penalty of the bonds with the sheriff, instead of the bonds, no doubt after the sheriff's insolvency, and the ascertainment of the amount of the injury to her, "right and justice" would require that it should be paid over to her. In equity she was the real party to be indemnified. She was the ultimate sufferer. In chancery, the court seeks to deal with the real parties, and leaves the merely nominal parties out of the question. In the whole transaction it seeks to visit the burden upon the parties who have enjoyed the benefit. *Qui sentit onus, sentire debet et commodum.*—Broom's Max. 2 Stew. 378. The person who suffers the injury ought to have the advantage of the indemnity. Here, the intent was common, and the result was common, and the profit was common to all the parties to the bonds. All the parties to the bonds acted through the instrumentality of the sheriff to assail Mrs. Friend's rights of property. She was injured by their action, and they were benefited, and not the sheriff. The sheriff is insolvent. The remedy against him is merely nominal. The obligors to the bonds agreed to stand behind him, and furnish him, each, *pro rata*, according to the amount of the penalty of their several bonds, with the means to indemnify her for the damage she might sustain by their action. It would be a disregard of all the principles of "right and justice" to suffer them to escape and shuffle the responsibility off on the sheriff, who was merely their agent, and irresponsible. It may be difficult to find adjudicated cases precisely in point to support the decree of the learned chancellor in the court below; but when it is remembered that cases do not make principles, but that principles make cases, it seems to me that it must be admitted, if the principles upon which the cause has been decided are in conformity with "right and justice," as administered in courts of equity, it stands upon a better foundation than any case that could be cited in opposition to such a judgment.

Even at law, where the court is fettered by the technicalities of contracts and a much narrower procedure than in chancery, the rule is almost as broad as that here intimated. These moneys, in the hands of one person, which, *ex equo et bono*, should be paid to another, may be recovered in *assumpsit*, which is an equitable action.—*Hitchcock et al. v. Lukens & Son*, 8 Port. 333; 5 Smith Cond. R. 303; see also, *Lovejoy v. Murry*, 3 Wall. 1; *Guille v. Swan*, 19 Johns. R. 381; 2 Robinson's Pr. p. 299, 300.

Besides, the basis of Mrs. Friend's claim is, in effect, a foreign judgment. On such a judgment, the legal remedy by garnishment, possibly, could not be exerted against the debtors of Oliver, or persons having possession of his property. At least such remedy is doubtful and not well ascertained. This would be sufficient grounds to resort to a court of chancery.—*Bynum & Sims v. Sledge*, 1 Stew. & Port. 135; 2 Smith Cond. R. 416. Chancery will also take jurisdiction when it would prevent a circuity or multiplicity of actions at law. Here, a proceeding by garnishment at law would involve the necessity of eleven litigations instead of one, because the parties to each bond would be entitled to answer and litigate their liability, if summoned, in separate and distinct issues, and it might be necessary to summon all in order to secure the satisfaction of Mrs. Friend's judgment and decree against Oliver.—*Morgan et al. v. Morgan et al.*, 3 Stew. 383; 2 Smith Cond. R. 314; Rev. Code, § 2974; Code, § 2546; Rev. Code, § 2892. There can be no doubt that the condition of these bonds is broken. They were given to protect Oliver not only against loss and damage, but also from *liability*. As soon as Oliver's liability to Mrs. Friend was fixed by the decree of June 22d, 1861, for $5,227.48, and the obligors failed to discharge it, their bonds were broken. The bonds, then, are assets of Oliver, which might be resorted to on process of garnishment, in favor of Mrs. Friend, if her judgment was a decree of a legitimate court.—Rev. Code, § 2892.

These bonds are not barred by the statute of limitation, applicable to them, which is ten years.—Rev. Code, § 2900;

Code, § 2476. The period of the interregnum, during the supremacy of the rebellion, from the eleventh day of January, 1861, to the 21st day of September, 1865, is to be deducted in estimating the time of the limitation.—*Fox v. Lawson, adm'r,* 44 Ala. 319. After this deduction ten years had not elapsed from the date of the bonds to the commencement of this suit. The bonds bear date in November, 1853, and the suit was commenced in January, 1868. This would leave above six months of the time of the statute to run, leaving out of consideration other questions that might intervene to influence the decision on this point of the case.

The decree of the learned chancellor in the court below is correct, and in conformity to "right and justice," as administered in a court of chancery.—Const. of Ala. 1867, Art. I, § 15. It is therefore affirmed at the cost of the appellants, in this court and in the court below.