LEETE v. THE STATE BANK OF ST. LOUIS, *Appellant*.

Division Two, March 25, 1893.

1. **Statute, Prospective Operation of.** A statute is to be construed prospectively unless the intent that it is to be construed retrospectively is clearly expressed on its face.

2. ——: ——: MARRIED WOMAN'S ACT: VESTED RIGHTS. The married woman's act of March 25, 1873 (Revised Statutes, 1889, sec. 3296), creating a separate estate in the wife's personalty, inclusive of her rights of action and providing that the same shall not be deemed to have been reduced to the possession of the husband by his use, occupancy or care, but only by her express assent in writing, is to be construed prospectively and does not apply to marriages in existence at time of its passage or to rights which had then accrued. (*Hart v. Leete*, 104 Mo. 315, disapproved.)

3. ——: CONSTITUTION: RETROSPECTIVE LAWS. An application of said statute to marriages then in existence or to rights which had then accrued, would be violative of the constitutional provision prohibiting the enactment of a law retrospective in its operation.

Leete v. The State Bank of St. Louis.

4. ——: ——: ——. There is a marked distinction between a law which impairs the obligation of a contract and one which is retrospective in its operation.

5. **Married Woman** : ACT OF 1875: FEME SOLE. A married woman is as to the property rights conferred on her by said married woman's act (Revised Statutes, 1889, sec. 3296) a *feme sole* and therefore able to contract and to be contracted with.

6. ——: ——: ——: ESTOPPEL. So a married woman, as to persons other than her husband, may be estopped in relation to such property rights like any other property owner.

7. **Witness**: HUSBAND: AGENT FOR WIFE. A husband, under Revised Statutes, 1889, sec. 8922, is a competent witness to prove his own agency for his wife. (*Williams v. Williams,* 67 Mo. 661, and *Mfg. Co. v. Tinsley,* 75 Mo. 458, *disapproved.*)

*Appeal from St. Louis City Circuit Court.*—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

THE plaintiff by this equitable proceeding, instituted January 15, 1889, sought to compel the defendant bank to transfer to her fifteen shares of its stock then standing on its books in the name of her husband, James M. Leete, defendant, and also to account to her for dividends declared thereon, alleging that such shares were purchased by defendant James M. Leete with money which came to her by the bequest of her father in July, 1876 and January, 1877, and that with some of the money thus bequeathed to her her said husband on the eighth day of February, 1877, bought said stock for plaintiff, but without her consent in writing caused the certificate thereof to be made out in his own name.

The answer of the defendant bank, except that portion exscinded by the demurrer, was as follows:

"This defendant admits its corporation and change of name as in the petition alleged, and further admits that plaintiff, at the time of her marriage with defend-

ant James M. Leete, was entitled to a large amount of property under the will of her father, the late James Harrison, but denies each and every other allegation in said petition contained, and not hereinafter admitted.''

The answer of the defendant Leete is an admission of the allegations of the petition.

The referee, John W. Dryden, to whom were referred all the issues in the cause, made report in which he found the facts as follows:

"Plaintiff is the daughter of James Harrison, who died in 1870. He left a will, of which Edwin Harrison was executor, and under which plaintiff was a distributee or legatee. She and defendant Leete intermarried in 1871.

"On July 18, 1876, said executor paid to defendant Leete, on account of plaintiff's share in her father's estate as a distributee under said will, the sum of $17,000; and on January 24, 1877, he also paid to him on account of her said share the further sum of ten thousand seven hundred and fifty-five dollars ($10,755). Both sums were paid to him by means of bank checks drawn by said executor upon the Mechanic's Bank of St. Louis, payable to the order of defendant Leete. Both said checks were collected by said defendant, and within one or two days after the times of their respective payments to him, as stated above; the proceeds of them, except $755 out of the payment of $10,755, were deposited by him in the said Mechanic's Bank to his own credit in an account kept by him with said bank in his own name. Up to February 15, 1877, said defendant had deposited no moneys in said Mechanic's Bank, except said two sums of $17,000 and $10,000, above mentioned.

"On February 8, 1877, said defendant purchased of the State Savings Association fifteen shares of its

capital stock, of the par value of $50 per share, at the total price of $1,515, and on said day paid to it said price out of said moneys so deposited by him in said Mechanic's Bank, by giving to him a check in its favor with his own name, and drawn on said bank; which check said bank paid on February 9, 1877. Said defendant Leete in buying said stock took from said savings association a certificate of the ownership of it in his own name only, and has ever since held said certificate unassigned to the plaintiff. Said certificate bears date February 8, 1877, is numbered 983, and certifies that James M. Leete is entitled to fifteen shares of the capital stock of the State Savings Association, transferable only on the books thereof, in conformity with the articles and by-laws of said corporation, and upon return of said certificate. Before the beginning of this suit, and in the years 1883, 1885, 1887 and 1888, there had been declared upon said stock nine dividends of $60 each, amounting together to $540, which had not been at any time paid to plaintiff or to defendant Leete, and since the beginning of the suit two other dividends of $60 each, one of May 31, 1889, and the other on November 30, 1889, have been declared thereon, which are also unpaid. Said dividends so unpaid, together with interest computed upon those declared before the beginning of the suit from the time it was brought, and upon those declared since it was brought from the times they were severally declared, amount now to $720.65. And said shares are now of the value of $2,525.

"Plaintiff at no time gave defendant Leete any authority in writing to dispose for his own use or benefit of any of the moneys so paid to him by said executor, on account of her share in her father's estate, after March 25, 1875, nor in any way assented in writing to his reducing any of them to his possession.

"Respecting the averment in the petition that the purchase of stock alleged therein was made for account of plaintiff, I do not find that the evidence, outside of such conclusions as may be drawn from the facts above found, is sufficient to sustain it.

"If from those facts it can be concluded that the moneys with which said stock was bought were plaintiff's separate property, and were at the time of its purchase in said defendant's hands as her agent or trustee, then it will follow that the purchase was made for her account. But if from them the conclusion must be drawn that they were his moneys and not hers, then it cannot be found that the purchase was made for her account by him as her agent or trustee, unless there be other evidence of his agency or trusteeship for her in that behalf; and there was no such other evidence. Said defendant himself testified on her behalf that he bought the stock for her account, but there was no evidence that she ever requested him or in any way made him her agent to so buy it for her. If the moneys with which he bought it were his, then his buying it therewith for her account, without her request, was nothing more in effect than a purchase with an intent to make to her a gift of it, or of the money paid for it. A purchase for her account in that sense, in order to avail to establish a trust in her favor in the stock, ought, it seems to me, to be proved by clear and convincing evidence, not only of the intent existing at the time of the purchase, but also of the intent being carried out through a delivery of the gift, or some act equivalent thereto, or through some express declaration of a trust, made before the beginning of the litigation, and this proof was not made.

"I, therefore, do not here find as a fact that the said purchase of stock was made for account of plaintiff, but for the determination of the issue made as to the

averment that it was so made, as well as of the other issues, confine myself to the above found facts, and the conclusions to be drawn therefrom.''

Upon these bases of facts, the referee made and reported certain conclusions of law to the effect that the plaintiff was not entitled to recover, and recommended that her petition be dismissed. Thereupon the plaintiff filed numerous exceptions, which the trial court sustained, as to conclusions of law, but sustained and confirmed the report of the referee as to findings of facts, and thereupon entered a decree as prayed by plaintiff, and the defendant bank, failing in its motion for a new trial, brought this cause here on appeal.

*John G. Chandler* and *George R. Lockwood* for appellant.

(1) The Act of March 25, 1875 (Revised Statutes, 1879, sec. 3296), if applicable to the legacy of plaintiff under the will of her father, he having died, and she having married before the act, would be in conflict with article 2, section 15 of the constitution, forbidding retrospective legislation, and void. *Ex parte Bethurum*, 66 Mo. 545; *State ex rel. v. Greer*, 78 Mo. 188; *State ex rel. v. Railroad*, 9 Mo. App. 532; s. c., 79 Mo. 420; *Linley v. Ins. Co.*, 8 Mo. App. 363; *St. Louis v. Clemens*, 52 Mo. 133; *Ins. Co. v. Flynn*, 38 Mo. 483; Cooley on Constitutional Limitations, 362; Sedgwick on Statutory & Constitutional Law, pp. 188, 202. (2) The Act of March 25, 1875, was not intended to take away the right of a husband, theretofore married, to reduce to his possession choses in action previously accruing to his wife. The act cannot be construed as retrospective unless no other construction is possible. *State ex rel. v. Hays*, 52 Mo. 578; *State ex rel. v. Auditor*, 41 Mo. 25; *State ex rel. v. Greer*, 78 Mo. 188; *State ex rel.*

*v. Ferguson*, 62 Mo. 77; *Thompson v. Smith*, 8 Mo. 73; *State v. Grant*, 79 Mo. 113; *State ex rel. v. Walker*, 80 Mo. 610; *State ex rel. v. Finn*, 8 Mo. App. 341; *In re Jilz*, 3 Mo. App. 247. (3) If Act of March 25, 1875, be construed as taking away the husband's right then existing to reduce his wife's choses in action then in existence to his possession, it would so interfere with his vested rights of property as not to come within the proper limits of the law making power, would deprive him of property without due process of law, and be unconstitutional and void. *Westervelt v. Gregg*, 12 N. Y. 202; *Norris v. Beyea*, 13 N. Y. 273; *Rider v. Hulse*, 24 N. Y. 272; *Vallance v. Bausch*, 8 Abb. Pr. 371; s. c., 28 Barbour, 636; *Savage v. O'Neil*, 42 Barb. 379; *Briggs v. Mitchell*, 60 Barb. 312; *Matter of Reciprocity Bank*, 22 N. Y. 15; *White v. Wager*, 25 N. Y. 332; *Barnes v. Underwood*, 47 N. Y. 356; *McCahill v. Hamilton*, 20 Hun, 393; *Berley v. Rampacher*, 5 Duer, 189. (4) Under the facts alleged in the amended answer, plaintiff was estopped to claim the stock in question as against defendant bank. *Baum v. Mullen*, 47 N. Y. 577; *Bodine v. Killeen*, 53 N. Y. 93; *Favill v. Roberts*, 50 N. Y. 222; *Regina v. Shropshire Union Co.*, L. R. 8 Q. B. 420; *Sherman v. Eheer*, 24 N. Y. 381; *Bank v. Bank*, 16 N. Y. 125; *Griswold v. Haven*, 25 N. Y. 595; *Bank v. Monteath*, 26 N. Y. 505; *Fox v. Meyer*, 54 N. Y. 125; *Savage v. Murphy*, 34 N. Y. 308. (5) The statute of fraudulent conveyances under the facts stated in the amended answer furnished a complete defense to plaintiff's action. 2 Revised Statutes, 1889, sec. 5173; *Cook v. Clifford*, 12 Mo. 379; *Layson v. Rogers*, 24 Mo. 192; *Blount v. Haney*, 43 Mo. App. 644. (6) The statute of limitations was a complete defense to plaintiff's action, as was also her *laches*. Revised Statutes, 1879, sec. 3296; Revised Statutes, 1889, sec. 6689; *Kibbe v. Ditto*, 93

U. S. 674; *Ball v. Bullard*, 52 Barb. 141; *Acker v. Acker*, 81 N. Y. 113; *Castner v. Walrod*, 83 Ill. 171. (7) Under the facts in evidence, and the finding of the referee, Dr. Leete was not a competent witness for his wife. There was no evidence that he assumed to act, or did act, as her agent. *Williams v. Williams*, 67 Mo. 661; *Mfg. Co. v. Tinsley*, 75 Mo. 458; *Curry v. Stephens*, 84 Mo. 442; *White v. Chaney*, 20 Mo. App. 389; *Brown v. Kirk*, 20 Mo. App. 524. (8) As Dr. Leete did not profess to act as agent for his wife, but for himself and in his own right, she could not ratify his acts and make him her agent so far as to affect the rights of third parties. Story on Agency [8 Ed.] sec. 251a. (9) If she could ratify, and by bringing this suit did ratify, then her ratification extended to all his acts and dealings with her money and stock purchased as his own. She could not ratify in part and repudiate in part. Story on Agency [8 Ed.] sec. 250; Broom's Legal Maxims, 152–3. (10) Under the facts stated in the amended answer, the defendant bank under its charter and by-laws had a lien on the stock for the debt of Dr. Leete, and the right to retain it and to refuse a transfer thereof to the plaintiff. *Ins. Co. v. Goodfellow*, 9 Mo. 149; *Bank v. Bank*, 45 Mo. 513; *Spurlock v. Railroad*, 61 Mo. 319; *Bank v. Laird*, 2 Wheat. 390; *Morgan v. Bank*, 8 S. & R. 73; *Bank v. McNeal*, 10 Bush. 54; *Neal v. Jenney*, 2 Cranch C. C. 188; *Pierson v. Bank*, 3 Cranch. C. C. 363; *Palmyra v. Morton*, 25 Mo. 93; *McLellan v. Schools*, 15 Mo. 362; Angell & Ames on Corporations [10 Ed.] sec. 359; *Bank v. Laird*, 2 Wheat. 390.

*E. T. & C. B. Allen* for respondent.

(1) The right of a husband to reduce to his possession the choses in action of his wife is not a vested

right. *Kirkpatrick v. Holmes*, 108 N. C. 206; *In re Parsons*, L. R. 45 Ch. Div. 51. (2) Inchoate dower is not a vested right. *Richards v. Land Co.*, 47 Fed. Rep. 854; *Chapman v. Chapman*, 29 Pac. Rep. (Kan.) 1071; *Randall v. Krieger*, 23 Wall. 137. (3) Curtesy before birth of issue is not a vested right. (4) Curtesy initiate is not a vested right. *Rugh v. Ottenheimer*, 6 Ore. 231; *Gitchell v. Messmer*, 87 Mo. 131; *In re Curtis' Will*, 61 Hun, 372; *Thurber v. Townsend*, 22 N. Y. 516. (5) The act of March 25, 1875 (Revised Statutes 1889, sec. 6869), in terms applied to all personal property which respondent received from her father's estate after the date of act, notwithstanding her marriage was prior to that date. (6) Such a construction of the act in question does not make the act retrospective, within the meaning of the constitutional inhibition, because it interferes with no vested right of the husband or his creditors. *In re Parsons*, L. R. 45 Ch. Div. 51. (7) The appellant is in no position to raise the constitutional question referred to in the preceding paragraph. (8) The statute of fraudulent conveyances (Revised Statutes, 1889, sec. 5173) has no application to property rights between husband and wife. *Gambler v. Gambler*, 18 Pa. St. 363; Schouler on Husband & Wife, sec. 221, p. 268. (9) Conceding as it must be conceded, in order that appellant may invoke the doctrine of estoppel, that the stock in question was the property of respondent by virtue of the act of March 25, 1875, the facts averred in the answer were not sufficient to constitute a defense to the cause of action stated in the petition. A party cannot traverse, and at the same time confess and avoid the same cause of action. (10) The second amended answer failed to aver that the certificate of stock was especially hypothecated as security for all or either of the four notes referred to in the amended answer. Had there been

such an averment it would not have availed appellant in view of the facts it knew, which put it on inquiry as to the ownership of the stock. *Stickney v. Stickney*, 8 South. Rep. (Ala.) 568. (11) The facts stated in the second amended answer in respect of appellant's by-law were not sufficient to constitute a defense to the cause of action stated in the petition. *Murray v. Pinket*, 12 C. & F. 764; *Stickney v. Stickney, supra*. (12) The facts alleged as constituting defenses were not separately stated, as required by section 2050, Revised Statutes, 1889. (13) *First*. Section 6767 (Revised Statutes, 1889) expressly excepts "married women" from the operation of the statute of limitations. The statute of March 16, 1883 (Acts, 1883 p. 113) did not repeal section 6767 by implication. *Second*. Repeal by implication is not favored in this state. *Third*. The supreme court of the United States on all such questions follows the supreme court of the state where the case arose. *Fourth*. Possession of a trustee is not deemed adverse until disavowal of the trust. *Goodwin v. Goodwin*, 69 Mo. 617; *Nave v. Smith*, 95 Mo. 596; *Bank v. Gray*, 84 Ky. 565; *Matter of Frazier*, 92 N. Y. 239. *Fifth*. In this state there is no distinction between law and equity cases as regards the statute of limitation. No laches will amount to a bar, unless made such by the statute. *Bliss v. Pritchard*, 67 Mo. 181; *Kelley v. Hart*, 74 Mo. 561; *Ward v. Brown*, 87 Mo. 468; *Kline v. Vogel*, 90 Mo. 239; *Shradski v. Albright*, 93 Mo. 42; *Hoge v. Hubb*, 94 Mo. 480; *Turner v. Johnson*, 95 Mo. 431; *Dunn v. Miller*, 96 Mo. 324. (14) The court below did not err in sustaining respondent's exceptions to the referee's report, nor in entering judgment pursuant to the law of the case as applicable to the special findings of facts contained in the report, and not excepted to by the appellant. (15) The court below did not err in over-

ruling appellant's motion for a new trial. No exceptions to report of referee were filed by appellant as required by section 2154, Revised Statutes, 1889; hence the points raised by the first and second paragraphs of the motion for a rehearing are not before this court. James M. Leete was a competent witness.

SHERWOOD, J.—The death of the testator Harrison, the father of plaintiff, occurring in 1870, her marriage with Leete in 1871 and the reception by the husband of certain sums of money from the executor of the will in 1876 and in 1877, with a portion of which money in the latter year he bought in his own name the stock in controversy, brings into prominence the act of March 25, 1875, p. 61, now section 3296, Revised Statutes, 1879, which is so far as necessary to quote as follows: "Any personal property including rights in action belonging to any woman at her marriage or which may have come to her during coverture by gift, bequest or inheritance * * * shall * * * be and remain her separate property and under her sole control. * * * This act shall not effect the title of any husband to any personal property reduced to his possession with the express assent of his wife: *Provided*, that said personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property, unless by the terms of said assent in writing full authority shall have been given by the wife to the husband to sell, incumber or otherwise dispose of the same for his own use and benefit."

I. This section is the pivotal point in this litigation, and upon its construction depends the conclusions which should be reached. In considering the section two questions become salient. Did the act quoted operate prospectively or retrospectively? If the latter

did it violate section 28 of article 1 of the constitution of 1865, "That no *ex post facto law*, nor law impairing the obligation of contracts or retrospective in its operation can be passed?"

In construing statutes in regard to whether their action is to be prospective or retrospective, all the adjudicated cases and all the text-writers with unbroken uniformity unite in declaring "that they are to operate *prospectively* and not otherwise unless the intent that they are to operate in such an unusual way, to-wit, retrospectively, is manifested on the face of the statute in a manner altogether free from ambiguity." *State ex rel. v. Auditor*, 41 Mo. 25; *State ex rel. v. Ferguson*, 62 Mo. 77; *Thompson v. Smith*, 8 Mo. 723; *State ex rel. v. Hays*, 52 Mo. 578. In the case last cited the rule is announced by EWING, J. in words still more emphatic. He says: "Statutes are not to be construed as having a retrospective effect unless the intention of the legislature is clearly expressed that they shall so operate, and unless the language employed admits of no other construction." The same rule is stated by Mr. Sedgwick: "Courts refuse to give statutes a retroactive construction unless the intention is so clear and positive as by no possibility to admit of any other construction." Construction of Statutory and Constitutional Law, 166, *et seq.*, and cases cited.

Abundant authority elsewhere supports the position here taken. In Wisconsin when speaking of the intention of the legislature the supreme court of that state says: "There is language used in the law of 1865 which in its broad, general sense might perhaps be held to apply to tax deeds of municipal corporations previously executed. It declares that the 'grantee named in any deed, made by 'the treasurer of any incorporated city or village on the sale of lands for the nonpayment of taxes may at any time within three years

after the date of such conveyance commence an action,' etc. This language must however be construed as applying to deeds executed after the passage of the law. For the rule is well settled that statutes are not to be construed as having a retrospective effect unless the intention of the legislature is clearly expressed that they shall so operate. *Seamans v. Carter*, 15 Wis. 548. 'That intention is not to be assumed from the mere fact that general language is used which might include past transactions as well as future. Statutes are frequently drawn in such a manner. Yet such general language is held to have been used in view of the established rule that statutes are construed as relating to future transactions and not to past.' This is the language of Mr. Justice PAINE in the above case; and there can be no doubt that it is fully in harmony with the authorities upon this subject." *Finney v. Ackerman*, 21 Wis. 271, and cases cited; *Ely v. Holton*, 15 N. Y. 595, and cases cited.

In the cases just mentioned the principle under discussion was applied even in remedial statutes. Mr. Justice COOLEY announces the same rule as applicable alike to constitutions and to statutes, saying: "It is 'one of such obvious convenience and justice that it must always be adhered to in the construction of statutes unless in cases where there is something on the face of the enactment putting it beyond doubt that the legislature meant it to operate retrospectively.' * * * Retrospective legislation is * * * commonly objectionable in principle and apt to result in injustice; and it is a sound rule of construction which refuses lightly to imply an intent to enact it." Cooley on Constitutional Limitatations [6 Ed.] 77, 455. See, also, *State v. Grant*, 79 Mo. 113, where the foregoing authorities are collated and quoted with approval.

Recurrence to such familiar principles of construction is not altogether superfluous as will presently appear.

In the present instance not only is there nothing in the statute to show that it was intended to operate retrospectively, but on the contrary the section itself contains internal evidences that its prospective operation alone was contemplated, because the section says that: "This act shall not affect the title of any husband to any personal property reduced to his possession with the express assent of his wife." That such language was not intended to apply to existing or past transactions is apparent from a moment's consideration of that common law principle which enabled the husband without the assent, or even against the opposition of, his wife, to reduce any personal property or chose in action of hers into his own possession. Evidently, therefore, the act relates to the future.

In *Hart v. Leete*, 104 Mo. 315, in determining whether the act operated on existing marriages, it is said: *"There is no exception made for cases where the marriage relation existed at the date of the act, and we have no power to make one not made by the act itself."* But this statement, from considerations already presented, is incorrect. The rule is that the act is to operate *prospectively* only, and not otherwise, unless upon the face of the act itself the exceptions to the prospective rule do plainly and unmistakably appear. Nothing but the hand of the legislature can ingraft upon a statute the exception which arrests the operation of the familiar rule, and gives to the act a retrospective aspect. As the legislature has not grafted any such exception on the statute, the only thing left to do is to construe and apply the statute prospectively, and not to marriages then in existence, or to rights which had then accrued. This consideration alone is decisive of this case, and rules it against the plaintiffs.

II. But conceding for the nonce that the section quoted does in terms operate on existing marriage relations, and looking at the matter from a constitutional point of view, how stands plaintiff's case? As will be remembered, the provision heretofore quoted contains these prohibitions: One forbidding the passage of an *ex post facto* law; one against the passage of a law impairing the obligation of contracts, and one prohibiting the enactment of a law retrospective in its operation.

A retrospective law was long since defined by Mr. Justice STORY when construing a provision of the organic law of New Hampshire substantially like our own. He said: "Every statute which takes away or impairs vested rights acquired under existing laws or creates a new obligation, imposes a new duty or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." *Society v Wheeler*, 2 Gall. 105. This definition has since been followed. Sedgwick on Construction of Constitutional & Statutory Law [2 Ed.] p. 160.

But few states have organic laws like our own on the point now being considered, and this will account for the most part for an apparent divergence of adjudication in regard to it. Touching this subject, Judge COOLEY observes: "And this brings us to a particular examination of a class of statutes which is constantly coming under the consideration of the courts, and which are known as *retrospective laws* by reason of their reaching back to and giving to a previous transaction some different legal effect from that which it had under the law when it took place. There are numerous cases which hold that retrospective laws are not obnoxious to constitutional objection, while in others they have been held to be void. The different decisions have been

based upon diversities in the facts which make different principles applicable. There is no doubt of the right of the legislature to pass statutes which reach back to and change or modify the effect of prior transactions, provided retrospective laws are not forbidden, *eo nomine*, by the state constitution, and provided further that no other objection exists to them than their retrospective character. Nevertheless, legislation of this character is exceedingly liable to abuse; and it is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively. And some of the states have deemed it just and wise to forbid such laws altogether by their constitutions." Constitutional Limitations [6 Ed.] 454, 455.

Another author, treating the same topic, says: "The result of this branch of our inquiry is, then, that the legislature is competent to give a statute a retroactive or retrospective effect, unless *first*, the act violate the provision of the federal constitution in regard to *ex post facto* laws and the obligation of contracts; or *second*, unless it so interfere with vested rights of property as not to come within the proper limits of the law-making power; or *third*, unless it comes within the purview of some express prohibition contained in a state constitution." Sedgwick on Construction of Constitutional & Statutory Law, 172, 173.

As shown by the authorities, there is a marked distinction between a law which impairs the obligation of contracts and one which is retrospective in its operation. *City to Use v. Clemens*, 52 Mo. 133; *Ex parte Bethurum*, 66 Mo. 545; *State ex rel. v. Railroad*, 79 Mo. 420; *DeCordova v. City*, 4 Tex. 470; *State ex rel. v. Greer*, 78 Mo. 188; *Ins. Co. v. Flynn*, 38 Mo. 483. If the former class included the latter, then the addition of the latter to section 28 of article 1 of the con-

stitution would have been a vain and meaningless addition.

Now, applying to the case at bar the tests of a retrospective law, are they to be found in the operation of section 3296 on the circumstances of this case? The day before that section went into operation, Leete, the husband, had the right to do these things:

*First.* He could have brought suit in his own name alone for any portion of the distributive share of his wife, coming to her after marriage (1 Chitty on Pleading [6 Am. Ed.] star p. 33); and if he had sued alone she would have had no interest in the amount recovered (1 Chitty on Pleading [16 Am. Ed.] 36.) and if he had died after recovering judgment in his own name, this would have cut off his wife's right of survivorship. 2 Kent's Commentaries [13 Ed.] 137. *Second.* He could have sold or assigned all of his wife's choses in action and converted the money to his own use, or he could with the consent of the executor have changed the securities, or could have released the debts due his wife. 2 Kent, 135.

These were his rights at common law, resulting from his marriage, but, when he woke up on the morning the section mentioned went into operation, he found himself, if plaintiff's position be correct, completely divested of his former vested rights, laboring under a *"new disability"* as to the past transaction of his marriage, its incidents and consequences, to-wit: He could no longer sue for and recover his wife's choses in action; reduce them into possession or sell, assign or release the same, etc.

If these are not the indubitable earmarks of a retrospective law, then it would be a futile undertaking to endeavor to find them. And rights of this nature are vested rights of action, are property, and as much protected by constitutional guarantees against arbitrary

interferences as tangible property; and, whether they spring from contract or principles of the common law, it is not competent for the legislature to take them away. Cooley on Constitutional Limitations, 443, and cases cited.

The state of New York has no prohibition against retrospective laws, but nevertheless, in *Westervelt v. Gregg*, 12 N. Y. 202, the act of 1848 substantially identical with our own statute was passed upon, and it was there held that the act of 1848 was unconstitutional because of violating that organic provision which declares that, "No person shall be deprived of life, liberty or property without due process of law." This is a leading case, the ruling being unanimous, and made at a period when such jurists as Judge DENIO adorned the bench, he delivering one of the opinions. The same ruling has been repeatedly made in that state (*Norris v. Beyea*, 13 N. Y. 273; *Holmes v. Holmes*, 4 Barb. 295; *Ryder v. Hulse*, 24 N. Y. 372), and the same view has been taken elsewhere. *Sperry v. Haslam*, 57 Ga. 412; *Dunn v. Sargent*, 101 Mass. 336; *O'Connor v. Harris*, 81 N C. 279; *Kidd v. Montague*, 19 Ala. 619; *Sterns v. Weathers*, 30 Ala. 712; *Kirksey v. Friend*, 48 Ala. 276; *Jackson's Adm'r v. Sublett*, 10 B. Mon. 467; *Gardner v. Hooper*, 3 Gray, 398; *Dash v. Van Kleek*, 7 Johns. 477.

These rulings have received the approval of a text-writer of recognized merit who says: "The wife's personal property already in possession or reduced to possession by the husband is his. And, to go still further, in her *choses in action*, or unreduced personalty which he is already at liberty to reduce, there is a valuable existing interest capable of assignment and transfer, a vested right in the husband, which a subsequent statute or state constitutional provision cannot

deprive him of, according to the better opinion." Schouler on Husband & Wife, sec. 211.

Authorities are to be found opposing this view; among them: *Clarke v. McCreary*, 12 S. & M. 354; *Goodyear v. Rumbaugh*, 13 Pa. St. 480; *Mellinger's Adm'r v. Bausman's Trustee*, 45 Pa. St. 522; *Keagy v. Trout*, 7 S. E. Rep. (Va.) 329; *Alexander v. Alexander*, 7 S. E. Rep. (Va.) 335; *Henry v. Dilley*, 25 N. J. Law, 302. In none of the cases just cited, however, were there constitutional prohibitions as to retrospective laws, such as we have in this state. So that this consideration alone, for reasons already stated, should prevent our following those cases, even did we regard them otherwise sound as precedents.

Besides, this court on several occasions has ruled that section 1 of the act of March 5, 1849, for the benefit of married women did not apply to debts of husbands contracted before its passage. *Cunningham v. Gray*, 20 Mo. 170; *Tally v. Thompson*, 20 Mo. 277.

That act was as follows: "In addition to the property now exempt from levy and sale under execution, by the tenth, eleventh and twelfth sections of the act of which this is amendatory, the property owned by a woman before her marriage, and that which she may acquire after her marriage, by descent, gift, grant, devise or otherwise, and the use and profits thereof, shall be exempt from all debts and liabilities of her husband, contracted or incurred by him previous to their marriage, or previous to the time the wife came into the possession of such property."

And these rulings were made on the basis that the act if otherwise construed, would be obnoxious to section 17, article 13, of the constitution of 1820, which forbade the passage of any "law impairing the obligation of contracts, or retrospective in its operation." In *Hockaday v. Sallee*, 26 Mo. 219, these rulings were fol-

lowed and applied to a case where a debtor of the wife, who became such before the passage of the act, was successfully garnisheed as the debtor of the husband. These instances from our own reports serve to show the vested nature of the *jus mariti* in question, and that it is incapable of retrospective abrogation.

The point in hand is put very aptly in *Westervelt v. Gregg, supra,* where EDWARDS, J., said: "A right to reduce a chose in action to possession is one thing, and a right to the property which is the result of the process by which the chose in action has been reduced to possession, is another and a different thing. But they are both equally vested rights. The one is a vested right to obtain the thing, with the certainty of obtaining it by resorting to the necessary proceedings, unless there be a legal defense, and the other is a vested right to the thing after it has been obtained."

Now, if I have a right of action to recover a chose in action or a piece of property, and the legislature should pass a law to take away my right of action, and thus leave me remediless, certainly no court would affirm the validity of such an act; but what difference can there be in point of constitutional principle between an act of that sort and one which cuts off my right to sue for a chose in action or personal property and thus *make the same my own?* Can it be possible that in the former case I am deprived of a valuable and vested right and not in the other? It seems impossible to believe that such rights in either case can be made the sport of legislative experiment or caprice, and yet the organic law afford them, when invaded, no protection. On this ground also the law is with the defendant company.

III. On several occasions this court has ruled that a married woman is as to the property rights conferred upon her by section 3296 a *feme sole* and therefore able

to contract and be contracted with.    *Blair v. Railroad*, 89 Mo. 383; *Brown v. Bowen*, 90 Mo. 184; *Broughton v. Brand*, 94 Mo. 169; *Gilliland v. Gilliland*, 96 Mo. 522.    As to such property, therefore, she, possessing the *jus disponendi*, the chief attribute of ownership is *sui juris*, and of consequence as much capable of being estopped as any other property owner so far as concerned the outside world.    *Henry v. Sneed*, 99 Mo. *loc cit.* 425.    As to her husband, of course, she could only be estopped by her instrument in writing; for so the statutes provide, but not so as to strangers.

In this case the evidence shows that plaintiff suffered her husband to deal with the property in question which he received in 1876 and 1877 as his own; he bought the stock in his own name; he kept it in his own name for some twelve years, thereby obtaining for him a fictitious credit.    In such circumstances we hold she was estopped and postponed as to his creditors, as much so as if she had been a *feme sole* in fact as well as in law.    In other words, we hold that the statute which she now invokes is to be used as a shield and not as a sword; and we make this ruling independently of whether that statute is to be regarded as retrospective in its operation or not.    If prospective she has no right of action, if validly retrospective then she is estopped.

IV.    We hold also that the husband defendant was a competent witness—under the provisions of section 8922—and that he was competent to prove his own agency.    It is allowable as to any other witness to prove his own agency, and no reason is perceived why any different rule should prevail as to a witness merely because he occupies certain marital relations to one of the parties to the suit.

For this reason we disapprove of the rulings in *Williams v. Williams*, 67 Mo. 661 and *Mfg. Co. v. Tinsley*, 75 Mo. 458.    And while on this head, it may

be well to remark that the husband being a competent witness, full opportunity should have been given the defendant bank to examine him fully in regard to all matters to which his testimony was relevant.

The judgment should be reversed and the cause remanded.   All concur.