WHEELOCK v. OVERSHINER *et al.*, *Appellants*.

### Division One, May 23, 1892.

1. **Warranty:** NOTICE OF ADVERSE SUIT. The notice to a warrantor of land of the adverse suit therefor, in order to conclude him by the judgment therein, must be distinct, unequivocal, and expressly require him to appear and defend such adverse suit.

2. ———: ———: EVIDENCE. While it is not essential to the recovery on the covenant that notice of the adverse suit should have been given to the warrantor, and while judgment without such notice is not evidence of eviction by paramount title, yet it is evidence of eviction, and as such admissible in evidence.

3. Land: HOMESTEAD: DOWER. Land of which a widow was seized in fee simple, because it was the homestead of her deceased husband, was sold at partition sale in a suit to which she was not a party. Dower had previously been assigned to her in a part of the premises, and she executed a conveyance of such dower interest to the purchaser at the partition sale, her second husband not joining in the deed. *Held*, that said purchaser acquired no title to the land by either transaction.

4. ———: ADVERSE POSSESSION. While she remained single the widow resided in a house on the land, but at first a half and subsequently three-fourths of the premises were cultivated for the heirs. All parties were ignorant of the widow's homestead rights. *Held*, that the heirs did not hold such adverse possession as would start the statute of limitations running against the widow's homestead title.

5. Absence from State: PRESUMPTION OF DEATH. Absence of a resident from the state for seven years in succession will raise a presumption of his death, in the absence of evidence to the contrary. (R. S. 1879, sec. 2330.)

6. Land: MARRIED WOMAN: LIMITATION. Where in ejectment by a woman it appears that defendant had been in the peaceful, continuous, adverse possession of the land for more than ten years after her right of action had accrued, and for more than three years after her disability had been removed by the presumption of the death of her husband, such possession confers on the defendant paramount title, and the plaintiff cannot recover.

7. ———: COVENANT OF WARRANTY: PARAMOUNT TITLE. The fact of the existence of such paramount title in said defendant will defeat a subsequent recovery on his warranty of title, and this is true notwithstanding the recovery against him in the ejectment suit, it appearing that the warrantor was not duly notified to appear and defend such suit.

*Appeal from Polk Circuit Court.*—HON. W. I. WALLACE, Judge.

REVERSED AND REMANDED.

*A. A. Underwood* for appellants.

(1)  The  evidence  shows  a  continuous,  open,
notorious  possession  under  claim  of  title  in  Wheelock,
and  those  under  whom  he  claims,  as  to  the  east  half  of
southeast  quarter,  less  fourteen  acres,  from  the  death  of
Young  M.  Pitts  in  May,  1871,  until  November,  1888,
and  of  the  northwest  quarter  of  the  southeast  quarter
from  1872—at  least  from  before  the  marriage  of  Eleanor
to  Nathaniel  Brittain—and  possession  of  the  southwest
quarter  of  southeast  quarter  from  July  7,  1871,  to
November,  1888.   Hence,  at  the  time  of  commencing
her  action,  Mrs.  Brittain  was  barred  by  the  statute  of
limitations,  and  Wheelock's  possession  had  ripened
into  an  affirmative  title.   *Ekey v. Inge*,  87  Mo.  493;
*Ridgeway v. Holliday*,  59  Mo.  444.   (2)   When  the
statute  of  limitations  begins  to  run  no  subsequent  dis-
ability  will  stop  it.   *Cunningham v. Snow*,  82  Mo.  587.
(3)   If  a  party  claims  a  disability  the  burden  of  prov-
ing  it  rests  on  the  party  so  claiming,  as  well  as  the
duration  of  it.   Suit  must  be  brought  within  three
years  after  removal  of  disability.   *Gray v. Yates*,  67
Mo.  601.   (4)   Where  a  person  has  been  absent  seven
years  without  being  heard  from  or  of,  the  presumption
is  that  he  is  dead,  and  the  death  may  be  presumed
from  facts  and  circumstances  prior  to  that  time;  but
after  seven  years'  absence,  at  most,  a  right  of  action
will  accrue,  and  the  disability  of  coverture  be  removed.
*Hancock v. Ins. Co.*,  62  Mo.  26;  *Lancaster, Adm'r, v.
Ins. Co.*,  62  Mo.  121;  *Kauz v. Red Men*,  13  Mo.  App.
341.   (5)   A  woman  entitled  to  a  homestead  under
the  law  of  1871  was  entitled  to  the  fee,  and  her  right
vested  immediately  upon  the  death  of  her  husband.   If
ousted  of  the  whole  or  any  part,  her  right  of  action
would  then  accrue.   *Skouten v. Wood*,  57  Mo.  380;
*Freund v. McCall*,  73  Mo.  343;  *Rogers v. Marsh*,  73

Mo. 64. (6) If a woman be entitled to dower and homestead in the same lands and obtains an assignment of dower and conveys her interest to another, she thereby waives and relinquishes her homestead. *Bates v. Bates*, 97, Mass. 392; 1 American Law of Administration, sec. 97, p. 205, note 6. Under the evidence in this case the widow was clearly estopped. It is only in those cases in which the title to the lands of which the husband died seized and possessed has not been changed, and the rights of intervening third parties have not accrued, that there is no estoppel. *Wright v. Dunning*, 46 Ill. 271; *Davis' Appeal*, 34 Pa. St. 256; *Baskins' Appeal*, 38 Pa. St. 65; *Gragg v. Gragg*, 65 Mo. 343; *Seek v. Haynes*, 68 Mo. 13. In this case there is not any evidence that Mrs. Brittain had no knowledge of the fact that she was entitled to homestead—an important element in 68 Mo. 13. (7) Minor children cannot abandon homestead, but widow may, even under law previous to 1875. A widow cannot have two homesteads, and the sale of one, or removal therefrom, and the acquisition of another, constitutes an abandonment. *Kaes v. Gross*, 92 Mo. 647; Thompson on Homesteads, sec. 286; *Wright v. Dunning*, 46 Ill. 271. (8) The judgment rendered in the Hickory circuit court was not binding on appellants, they being neither parties nor privies, and without any notice such as required by law.

*T. G. Rechow* and *J. B. Upton* for respondent.

(1) The action of covenant is an action at law, though, when against devisees, as in this case, the relief may be in its nature equitable, as the liability is only to the extent of the property devised. R. S. 1889, sec. 8839. (2) This, however, does not make it an equitable action. *Walker v. Deaver*, 79 Mo. 664;

*Irvine v. Leyh,* 102 Mo. 206; *Foote v. Clark,* 102 Mo. 406. (3) This court will not review the evidence in actions at law when there is substantial evidence to sustain the findings. *Handlan v. McManus,* 100 Mo. 124, 137; *Kolbaum v. Roepke,* 27 Mo. 161; *Altum v. Arnold,* 27 Mo. 264; *Easley v. Elliott,* 43 Mo. 290; *Harrington v. Minor,* 80 Mo. 270; *Cunningham v. Snow,* 82 Mo. 593. (4) Even in equity cases this court will defer to the chancellor. *Springer v. Kleinsorge,* 83 Mo. 159; *Mathias v. O'Neil,* 94 Mo. 530; *Erskine v. Lowenstein,* 82 Mo. 309; *Snell v. Harrison,* 83 Mo. 658; *Sharp v. McPike,* 62 Mo. 307; *Rawlins v. Rawlins,* 102 Mo. 567. (5) The only exception saved by appellants is as to the admissibility of the judgment of ouster in the circuit court of Hickory county against John Bain and James C. Wheelock, and this was clearly admissible for the purpose of showing the ouster and the dispossession of Wheelock and his tenant. 2 Black on Judgments, sec. 571; 2 Wait's Actions & Defenses, p. 392; Rawle on Covenants for Title [5 Ed.] secs. 123–4; *Fields v. Hunter,* 8 Mo. 132; *Walker v. Deaver,* 79 Mo. 678. (6) The judgment is conclusive against those having notice of the suit. Wait's Actions & Defenses, *supra;* Rawle on Covenants for Title [5 Ed.] sec. 117. (7) W. D. Pitts and John Overshiner had sufficient notice. *Chamberlain v. Preble,* 11 Allen, 373; *Littleton v. Richardson,* 34 N. H. 187; *Minor v. Clark,* 15 Wend. 427; *Andrews v. Gillispie,* 47 N. Y. 487; *Paul v. Witman,* 3 Watts & S. 410; *Cresfield v. Starr,* 36 Md. 129; Wade on Notice [2 Ed.] sec. 480; Rawle on Covenants for Title [5 Ed.] sec. 120, and notes. (8) Objections for want of notice are waived by placing a refusal to comply upon other grounds. 16 American & English Encyclopedia of Law, title notice, par. 8, and authorities there cited. Pitts based his refusal on the ground that there was no liability, and Over-

shiner on the ground that Pitts was not present. (9) Under the law of 1865 the widow took the fee to the homestead subject to the right of homestead of the minor children during their minority. *Skouten v. Wood*, 57 Mo. 380; *Register v. Hensley*, 70 Mo. 190; *Burgess v. Bowles*, 99 Mo. 548; *Quinn v. Kinyan*, 100 Mo. 554; *Kelsey v. Frazier*, 78 Mo. 114; *Gragg v. Gragg*, 65 Mo. 343; *Rodgers v. Marsh*, 73 Mo. 64; *Rockhay v. Rockhay*, 97 Mo. 79. (10) The sheriff's deed to Merideth Richards is void for uncertainty of description as to the east half of the southeast quarter. *Evans v. Ashley*, 8 Mo. 177; *Clemens v. Rannells*, 34 Mo. 584; *Campbell v. Johnson*, 44 Mo. 250. It is not even color of title as to that. *Hamilton v. Boggess*, 63 Mo. 244. (11) It cannot affect the rights of the widow as she was not a party to the suit. *Graves v. Ewart*, 99 Mo. 13; *Dugge v. Stumpe*, 73 Mo. 513; 2 Black on Judgments, sec. 600. (12) The deed made by Eleanor Brittain to Merideth Richards is void. *First*, because she was a married woman at the time, and her husband does not join in the same. R. S. 1879, sec. 669; *Huff v. Price*, 50 Mo. 228; *Belo v. Mayes*, 79 Mo. 71. *Second*, because it is not acknowledged as required by law; it does not show that the contents were explained, or that she was examined separate and apart from her husband. *Goff v. Roberts*, 72 Mo. 570; *Bartlett v. O'Donoghue*, 72 Mo. 563; *Wannell v. Kem*, 57 Mo. 478; *Steffen v. Bauer*, 70 Mo. 401. (13) There is no estoppel as against a married woman in a case of this kind. *Thompson v. Reno*, 12 Mo. 161; *Crenshaw v. Creek*, 52 Mo. 101; *Hemstead v. Easton*, 33 Mo. 142; 2 Herman on Estoppel & Res Adjudicata, p. 717. (14) And, if there was, it must be pleaded. *Freeman v. Whitford*, 39 Mo. App. 311; *Miller v. Anderson*, 19 Mo. App. 71; *Bray v. Marshall*, 75 Mo. 330; *Hammerslough v. Cheatham*, 84 Mo. 13; *Campbell v. City of Kansas*, 102 Mo. 326. (15) There

is no adverse possession shown. *Rodney v. McLaughlin,* 97 Mo. 431; *Warfield v. Lindell,* 30 Mo. 272.

BRACE, J.—On the seventeenth of September, 1881, Merideth Richards and wife, by general warranty deed, conveyed one hundred and forty-six acres of land in Hickory county, Missouri (described in the petition), to the plaintiff, who thereupon entered into and remained in possession thereof, until evicted therefrom under a judgment of the circuit court of said county against him rendered on the twenty-first day of November, 1888, in an action of ejectment in favor of Eleanor Brittain. In the meantime the said Merideth Richards died possessed of an estate largely in excess of the value of the land conveyed, which by his last will he devised to his wife, Mary Richards, and to the defendants, John Overshiner, Reuben Richards and Eliza Pitts.

Prior to the twenty-first of November, 1888, the estate of the said Merideth was finally settled, and the said devisees came into possession of their estate under said will, and thereafter the said Mary Richards died testate, and by her last will devised all the estate received from her said husband to the said defendants, Eliza Pitts and John Overshiner; and the said defendants, John Overshiner and W. D. Pitts, are the executors of the last will and testament of the said Mary Richards, whose estate is now in course of administration by said executors.

This suit was brought by the plaintiff on the thirtieth day of November, 1888, to recover damages for breach of the covenants of warranty in the said deed so executed by the said Merideth Richards to plaintiff, and to charge the same against the defendants, his devisees.

The answer denied any breach of the covenants of the deed; any knowledge that a judgment was rendered against plaintiff in respect of said lands, as charged in the petition, and averred that, if any such judgment was rendered, it was obtained by fraud and collusion between the plaintiff and the said Eleanor Brittain.

The reply put in issue the new matter set up in the answer, and averred that the defendants Overshiner and Pitts were notified of the pendency of the suit against plaintiff, and were present at the trial when judgment of ouster therein was rendered against plaintiff. The case was tried without a jury, and no declarations of law were given. The court found the issues for the plaintiff, assessed his damages at $1,847, apportioned the same among the devisees according to the respective amounts received by them under the will of said Richards, and rendered a separate judgment against each devisee for the amount so apportioned, to be levied of the estate received by each from said testator. From this judgment the defendants appeal.

I. On the trial the judgment in the ejectment suit of Eleanor Brittain against the plaintiff was admitted in evidence over the objections of the defendants, and this is assigned for error. The defendants were not parties to that suit, and the only notice that any of them had of it, as appears from the evidence of the plaintiff, was that after the suit was instituted, and before he entered his appearance, he had a talk with defendants Overshiner and Pitts about the case, in which he asked them to assist him in employing counsel to defend the case, and they declined. No notice whatever was shown as to the other defendants.

In order to conclude a warranty by a judgment of eviction "the notice must be distinct and unequivocal, and expressly require the party bound by the covenant to appear and defend the adverse suit." Rawle on

Covenants for Title [5 Ed.] sec. 125. And it cannot be said that any of the defendants were so notified in this case. Nevertheless, it was not indispensable to the recovery on the covenant that notice of the adverse suit should have been in any way given, and while the judgment without such notice is not evidence of eviction by paramount title, yet it is evidence of an eviction, and as such was admissible. *Fields v. Hunter*, 8 Mo. 128; *Walker v. Deaver*, 79 Mo. 664; 2 Black on Judgments, sec. 571. After its admission, it still remained for the plaintiff to show that the title under which he was ousted was paramount to that of his grantor. This the plaintiff did not undertake to do, and if the case had been submitted on the plaintiff's evidence the judgment must have been for the defendants; instead, however, the defendants relieved the situation by introducing evidence showing the title of each party to the ejectment suit, and presenting for the determination of the court the question whether on all the evidence the plaintiff had been ousted by paramount title.

II. It appears from the evidence that Young M. Pitts is the common source of title; that he died in May, 1871, seized and in possession of the land in question with other real estate not contiguous thereto; that, at the time of his death he was living with his family on the land in controversy, occupying it as his homestead; that it was then worth less than $1,500; that he left surviving him his widow, the said Eleanor and ten children, four of whom were adults, and six minors. It appears that the widow continued to reside with her infant children upon the homestead after the death of her husband until July, 1877; that by some sort of arrangement between her and the adult heirs, in the years 1872, 1873 and 1874, she retained the use of only part of it as for her dower—at first eighty acres,

and afterwards forty, and the rest was rented for the benefit of the heirs by the husband of one of the adults, who seemed to be acting as administrator of her husband's estate.

In August, 1873, the widow intermarried with one Brittain, who continued to live with her on the homestead for about a year, and then left her, and ever since has remained absent from her. In 1874, an *ex parte* proceeding was instituted by the adult children, and by one of them as guardian and curator of the minor children of the said Young M. Pitts, for partition among them of all the real estate of which the said Pitts died seized, including the homestead tract in controversy. To this proceeding, neither the widow nor her husband was a party. It culminated in an order of sale, and at the sale, on the eleventh of May, 1875, the said Merideth Richards, plaintiff's warrantor, became the purchaser of the homestead tract, and thereafter received a sheriff's deed therefor. Afterwards, on the seventh of July, 1877, Richards purchased from the widow her dower interest in the forty acres of the homestead which she retained as for her dower, and over which she exercised exclusive control, and received a deed from her in which her then husband did not join, conveying to him her dower interest therein. Under these deeds Richards seems to have gone into possession of the whole tract and remained in possession thereof until the sale and deed to plaintiff in 1881. His possession and these deeds gave him the only title he had when he executed the covenant of warranty in his deed to plaintiff, and the only title that plaintiff acquired thereby.

III. By the homestead law in force at the date of the death of Young M. Pitts, his widow became seized of the premises conveyed by Richards to the plaintiff in fee simple. *Case v. Mitzenburg*, 109 Mo. 311;

*Rogers v. Marsh*, 73 M . 64; *Skouten v. Wood*, 57 Mo. 380. And, even if a part of the premises had been regularly assigned to her as dower, she would not have been estopped from setting up and claiming her right to the land in fee. *Case v. Mitzenburg, supra*, and authorities cited. As against such right Richards acquired no title whatever by his deed from the sheriff in the partition proceeding, to which the widow was not a party; nor under her void deed of her dower interest in forty acres thereof, executed while she was a *feme covert;* and by his deed conferred upon plaintiff no title whatever in the premises against such right asserted by her in the ejectment suit, in which plaintiff was ousted, except such right as he may have acquired by possession.

It is contended, however, that at the time Mrs. Brittain commenced her suit in ejectment against the plaintiff in 1888, the possession acquired by him under the deed from Richards had ripened into an indefeasible title, to which her title was not paramount, and, therefore, plaintiff cannot recover. This defense was set up by the plaintiff in that suit, and the issue found against him then by the court, as it was found against the defendants in the present suit. It appears from the evidence that when Young M. Pitts died the homestead premises in controversy were all under fence, divided about equally into two fields by an interior fence running north and south; that the house was situated on the south half of the west field; that in 1871, when Pitts died, John Bradshaw, the husband of one of his daughters was, in the language of the witnesses, "tending" the farm; that, after the death of Young M. Pitts, Monroe Pitts, husband of one of the adult heirs, took charge of the estate as administrator, and undertook to represent the interest of the heirs in the land, and it is evident that he, the widow and all the heirs were entirely

ignorant of the widow's legal right of homestead in the premises; that in 1872 one Winfrey "tended" the land, and the evidence tends to prove that he "tended" the west field or eighty for the widow, and the east eighty for the heirs, and that the rent for the latter was paid to Monroe Pitts for their benefit. It seems that sometime, probably toward the latter part of this year, the heirs came to the conclusion that the half of the homestead was more than the widow was entitled to, and that the heirs ought to have the benefit of three-fourths of the tract. Consequently, the north half of the division fence was moved to a line running east and west across the middle of the west field, thus inclosing only forty acres in the southwest corner, on which the house stood for the widow. In 1873, a man by the name of Colston "tended" the land; he "lived in the house with the widow, and the heirs gave their consent for him to tend all the land he worked but the southwest forty;" and the evidence tends to show that Monroe Pitts collected from him the rent for all the land except that forty. The evidence tends to show that the widow took just what they chose to let her have, and made no claim for anything more. As before stated in August, 1873, she became covert again by her marriage with Brittain, and so remained until her suit in ejectment against the plaintiff was commenced in 1888. Under these circumstances we do not think there was such an adverse possession by the heirs of any portion of the premises during the period of the widow's discoverture as would start the statute of limitations to run against her homestead right.

The son-in-law, Bradshaw, tended part of the land again in 1874, as a tenant of Monroe Pitts, and built a house on the southeast quarter; how long he staid upon it does not appear. The evidence tends to show that soon after Richards purchased at the parti-

tion sale in May, 1875, he entered into the possession of all the tract, except the forty acres upon which the house stood, occupied by the widow; that upon his purchase from the widow of her dower interest in that forty in July, 1877, he took possession of it also; and that he and the plaintiff, under his deed aforesaid, from that date until the ouster of plaintiff in November, 1888, were in the continuous adverse possession of the whole tract. So that when Mrs. Brittain commenced her action of ejectment against the plaintiff on the fifth day of May, 1888, he and his grantor, Richards, had been in the continuous adverse possession of the east half and the northwest quarter of the tract for nearly thirteen years, and of the southwest quarter for more than ten years.

Mrs. Brittain was a married woman at the time this adverse possession commenced. She testifies: "I was married to Brittain on August 13, 1873. * * * Brittain and I lived together about a year, he then left me; about six months after he left me I heard of his being down at Joplin. About a year after he left me, Uncle Jerry Vaughn went south with some stock, and when he came back he told me that he saw Brittain a prisoner in the penitentiary at Little Rock; I don't know what state it was in, only I know it was not in this state. I never heard from Brittain after he left me, and I never heard of him but these two times, until after my suit was brought against Wheelock. When I made the deed to Richards I had not heard that Brittain was dead. After my suit was brought, Mr. Childers, one of my lawyers, told me that some one, I don't know who, had been down about Granby or Joplin and had heard that Mr. Brittain had died about three years before my suit was brought. Childers told me this after the suit was brought and before it was tried, but he did not tell us who told him."

This was all the evidence in the case tending to show the fate of Brittain, after he left his wife, say in August, 1874. He was last heard of alive in another state about August, 1875; and, in the absence of any evidence tending to prove that he was alive after that time, he must be presumed to have been dead on the first day of September, 1882, more than five years before Mrs. Brittain brought her suit in ejectment. R. S. 1879, sec. 2330; 62 Mo. 26, 121; Best on Evidence, sec. 409.

If the rumor that Mrs. Brittain heard after she commenced her suit can be considered as any evidence tending to prove that he was alive after that date, it tends also to prove that he was dead three years before she brought her suit. So that, from the evidence as it appears in this record, when that suit was brought, the plaintiff and his warrantor had been in the peaceful, continuous, adverse possession of all the land therein sued for, for more than ten years after Mrs. Brittain's right of action accrued, and more than three years after her disability of coverture had been removed, by the death of her husband,—a possession which gave him a title paramount to that of Mrs. Brittain, and which should have barred her action of ejectment. *Gray v. Yates*, 67 Mo. 601; R. S. 1879, secs. 3219, 3222.

And it thus appearing that the plaintiff in that suit was not ousted by paramount title, the judgment in this action should have been for the defendants. The judgment is, therefore, reversed, and the cause remanded, for a new trial. All concur.