## VANATA v. JOHNSON, Appellant.

### Division One, November 26, 1902.

1. **Ejectment: HUSBAND AND WIFE: NECESSARY PARTIES.** Where the wife's interest in land was devolved upon her prior to the enactment of the Married Woman's Act of 1889, she can not alone sue to recover such interest during the life of her then husband. The right to possession of such land was vested in her husband, who has the right to sue for it and enjoy it so long as she lives and he continues to be her husband, unless he is himself barred by the statute of limitations.

2. ————: ————: **LIMITATIONS AS TO HUSBAND.** The statute of limitations will debar the husband from recovering the wife's land which came to her by inheritance prior to the passage of the Married Woman's Act of 1889, and if the possession is adverse to him for the statutory period, the wife alone can not maintain suit for it, nor can he alone, nor can they jointly do so. She in such case is barred from suing for it until his death.

3. ————: ————: **MARRIED WOMAN'S ACT PROSPECTIVE.** The Married Woman's Act of 1889 is prospective, and the wife alone is entitled to maintain suit for all lands by her acquired after its enactment. The husband has no right to the possession of such lands and can not sue for them. But he who became prior to the passage of that act and is yet her husband has a vested and exclusive right to the possession of all lands acquired by her prior to the passage of that act and to sue for the same, not only as between him and her, but as between them or either of them and third parties. And this right was in no way affected by that act.

Appeal from Pettis Circuit Court.—*Hon. Geo. F. Longan,* Judge.

REVERSED.

*John Cashman* for appellant.

The court erred in refusing to instruct the jury to find for the defendant. There was no evidence to sustain the verdict rendered. The plaintiff was married to her present husband in the year 1849. Within a year thereafter there was born of this union a child which lived. The interest she now claims in the land descended from her father who died in October, 1868. If any interest descended, her husband alone had a right of possession thereto on and after the death of her father, by virtue of his marital rights. This right of possession having become vested in the husband prior to the Married Woman's Act of 1889, was not affected thereby, as that act operated prospectively only. Arnold v. Willis, 128 Mo. 145; Leete v. Bank, 115 Mo. 184; Leete v. Bank, 141 Mo. 574; Bartlett v. Ball, 142 Mo. 28; Clay v. Mayr, 144 Mo. 376; Smith v. White, 165 Mo. 590; Kennedy v. Koopmann, 166 Mo. 87; Dyer v. Wittler, 89 Mo. 81; Robards v. Murphy, 64 Mo. App. 90. Actual seizin, by the wife, during coverture, is not essential to an estate of the curtesy initiate in the husband; the right of seizin is all that is required in this State. Martin v. Trail, 142 Mo. 85; Cox v. Boyce, 152 Mo. 576; Harvey v. Wickham, 23 Mo. 115; Stephens v. Hume, 25 Mo. 349.

*Bente & Wilson* and *Ross & Bohling* for respondent.

(1) A married woman may maintain an action in ejectment in her own name for real estate in which she has an interest, notwithstanding she was married prior to the enactment of the Married Woman's Act of 1889. Bains v. Bullock, 129 Mo. 117. (2) A married woman may have a cause of action to regain the possession of

her real estate; still, the statute of limitation does not commence to run against her until the death of her husband. Furthermore, her right to sue for her real estate was not created until the enactment of the Married Woman's Act of 1889, and she brought this suit within ten years from said enactment. (3) If the husband was the proper party to this suit, the defendant has waived this defect by his answer. R. S. 1899, secs. 598, 602.

MARSHALL, J.—Ejectment to recover an undivided one-sixth interest in ninety-three acres in Pettis county. The plaintiff recovered judgment below for an undivided one-eighth interest, with damages for detention, and the defendant appealed. The petition is in the usual form. The answer is a general denial, coupled with special pleas: first, that the plaintiff is not a proper party and has no right to bring this action; second, a plea of the statute of limitations; third, title, by mesne conveyances, from the plaintiff and her husband.

The facts shown, briefly stated, are these: David Folkerth is the common source of title. He died in 1866, seized and possessed of the land, intestate and without issue, leaving as his heirs, his father, Christopher; his mother, Mary; his brother, Harvey; and his sister, Louisa, the plaintiff. The father went into possession of the land immediately thereafter. On November 23, 1867, the mother died intestate. On April 18, 1868, the plaintiff and her husband conveyed all her interest in the land to her brother Harvey, for a consideration of five hundred dollars, by a quitclaim deed, properly executed and recorded. On October 28, 1868, the father died intestate, and the brother Harvey went into possession of the land. On March 6, 1873, the plaintiff and her husband executed and delivered to the brother Harvey, a quitclaim deed, which under certain whereases recited the execution by them to the brother of the prior deed of April 18, 1868; the fact that David Folkerth, the common source of title, was,

at the date of the prior quitclaim deed, dead, and that he died intestate and without heirs of his body; the fact that the plaintiff Louisa and the said Harvey were, at the date of the second quitclaim deed, dated March 6, 1873, the only legal heirs of David Folkerth; the statement that these facts were omitted from the first quitclaim deed (it could not have been stated in the first quitclaim deed that Louisa and Harvey were the only legal heirs of David, for it was not then true—their father being alive at that time and having as much interest in the property as they had), and then the second quitclaim deed recites: "Therefore, for the correction and perfection of said conveyance of said Louisa Vanata and Gilbert Vanata, her husband, for the aforesaid purpose and for the consideration of one dollar," they quitclaim their right to the property to Harvey. This deed contains this clause immediately following the habendum: "The said Louisa Vanata and Gilbert Vanata hereby ratifying and confirming their aforesaid and first-mentioned deed of conveyance in general and in particular."

The brother, Harvey, was then in possession of the land, claiming to own the whole of it. Thereafter Harvey sold the land to J. C. Dillon, and he afterwards sold it to the defendant who has held the possession of it ever since, claiming it adversely to all the world, has improved it very materially, paid taxes upon it, built houses and barns and stables on it.

The plaintiff Louisa was married to her present husband, Gilbert Vanata, in 1849, had a child born alive in 1850, and has other children, and her husband is still living. She has lived in the neighborhood of the land in question all these years, and after she made the two quitclaim deeds referred to, she never asserted any claim to any part of the land until five or six years before this suit was brought. She now sues alone, and claims to own an undivided one-eighth interest in the land. She bases her claim on this: the land belonged to her brother David. When he died in 1866, intestate and without issue, he left as his heirs his father, his

mother, his brother Harvey, and his sister Louisa, the plaintiff, who each took a one-fourth undivided interest under the statute of descents. The mother died intestate in 1867. At her death, her one-fourth descended to Harvey and Louisa.

In 1868 Louisa quitclaimed all her interest in the land to her brother Harvey. This covered the one-fourth she inherited from David and also the one-eighth she got from her mother, which she had inherited from David.

In October, 1868, the father died intestate, and the one-fourth he had inherited from David, descended in equal parts to Harvey and Louisa, and it is this one-eighth interest the plaintiff now claims. The plaintiff also says that the second quitclaim deed which she made in 1873 was only intended to correct the first quitclaim deed made in 1868, and was not intended to and did not have the effect of passing the undivided one-eighth interest that she inherited from her father between the dates of the two deeds. The plaintiff further contends that having been a married woman all this time the statute of limitations does not bar her right to recover, and that under the Act of 1889 (now sec. 4340, R. S. 1899) she was for the first time given a right to bring an action in her own name for the possession of her real estate, during the life of the husband, and that this action was brought within ten years after her cause of action accrued by virtue of that act.

On the other hand, the defendant claims that if the plaintiff owns the one-eighth interest so inherited from her father, she can not maintain this action, for the reason that the cause of action having accrued prior to the Married Woman's Act, her husband had a vested right to the possession of his wife's lands during coverture and her life (he also living) which could not be taken away by that act, and that the wife's right of action will not accrue as long as her husband lives, and that as against the husband's claim the defendant has acquired a right by limitation which will entitle the de-

fendant to the possession during the life of the husband; and further, the defendant contends that the quit-claim deed from the plaintiff and her husband to her brother Harvey, dated March 6, 1873, conveyed the one-eighth interest the plaintiff inherited from her father and was not simply a correction of their prior deed of 1868.

## I.

The defendant's first contention that the plaintiff can not maintain this action is well taken and is decisive of this case, and, therefore, a decision of the other propositions is unnecessary.

The interest the plaintiff claims was devolved upon her in 1868 immediately upon the death of her father. At that time she was a married woman. Thereupon the husband became instantly vested with the exclusive right to the possession of the wife's interest, and the right to sue for it and enjoy it as long as his wife lived and he continued to be her husband. The wife had no right to sue for the possession, and for this reason her cause of action did not accrue and the statute of limitations did not begin to run against her until her husband's death. The statute of limitations, however, would run against the right of possession of the husband. This right of the husband arose from the marital relation, and was not in any sense a right of curtesy, initiate or otherwise, and did not depend upon the birth of a child. [Hall v. French, 165 Mo. l. c. 438.]

This being a vested right of the husband it was not and could not be taken away by the Married Woman's Act. [Leete v. Bank, 115 Mo. 184; Ibid. 141 Mo. 574; Flesh v. Lindsay, 115 Mo. 17; Arnold v. Willis, 128 Mo. l. c. 149; Bains v. Bullock, 129 Mo. l. c. 120; Smith v. White, 165 Mo. l. c. 596.]

That statute is prospective, and as to all property to which the wife acquired title after the passage of the act, the husband had no such right to the possession,

could not sue for it, and the wife alone was entitled to maintain an action therefor. But as to the property of the wife acquired before the passage of the act, the husband's rights remained as they were at common law and in this State before the act was passed. This cause of action in the wife accrued before the passage of the act, and, therefore, that act has no bearing upon the case. The plaintiff is not entitled to maintain this action as long as her husband lives. The exclusive right to maintain an action for the possession is in the husband. This is true not only as between the husband and wife, but as between them or either of them and third persons. [Arnold v. Willis, 128 Mo. l. c. 151.] This doctrine as to third persons was the point on which the trial court decided in favor of the plaintiff, and it was error to so hold.

Inasmuch as this disposes of this case it is unnecessary to consider any of the other questions raised.

The judgment of the circuit court is reversed. All concur, except *Valliant, J.,* absent.