## TOBITHA GRAHAM v. DANIEL KETCHUM, Appellant.

### Division Two, December 12, 1905.

1. **APPELLATE PRACTICE: Agreed Facts: No Instructions.** An agreed state of facts in an ejectment suit, although no instructions were asked or given, occupies the same footing as a special verdict, and the judgment thereon will not be reversed unless the court's conclusions as to the law upon said facts were incorrect.

2. **LIMITATIONS: Dower.** So long as the widow lives, to whom was assigned dower in the lands of her husband, his heirs have no right to the possession thereof.

3. ———: ———: **Married Female Heir: Right to Possession.**
And if after the death of the husband and the assignment of
dower to the widow, his son died leaving a widow and children
and those children died leaving their mother as their heir, and
she married again while the other widow's dower was still in
existence, the Statute of Limitations did not begin to run against
her on the death prior to 1889 of the endowed widow, or at any
time thereafter during the life of her husband, whether she
lived with or separate and apart from him, for during the mar-
riage he was, under the statute in force between 1865 and 1889,
entitled to the possession of her lands. And that was a vested
right, and having accrued prior to the Married Woman's Act,
was not taken away by that act. And though defendant may
have had actual adverse and  continuous  possession  for  ten
years prior to the bringing of her ejectment, she is not barred
if her suit was begun within ten years after her disability of
coverture was removed.

4. ———: **Who Are Barred.** Notwithstanding the sweeping and
exclusive language of the ten-year Statute of Limitations (sec.
4262, R. S. 1899), no person is barred thereby from maintaining
ejectment except such as have a present existing right to en-
force an action or make an entry.

5. ———: **Ejectment: Wife's Lands: Proper Plaintiff: Effect of
Statute as to Rents.** The husband is the proper party to sue
in ejectment for the possession of the wife's lands where the
right to sue therefor accrued prior to the enactment of the
Married Woman's Act of 1889. His right to possession was not
affected by the statute (sec. 4339, R. S. 1899) which provides
that the rents, issues and products of the real estate of a mar-
ried woman shall during coverture be exempt from attachment
or execution for the sole debts of her husband.

6. ———: ———: ———: **Possession: Curtesy.** The husband's
right to the possession of the wife's lands during coverture does
not and did not prior to 1889 depend upon an existing curtesy
initiate.

7. ———: ———: ———: **Married Women's Act:  Prospective.**
The Married Woman's Act of 1889 was prospective and all prop-
erty rights acquired by the husband prior to that enactment re-
mained as they were at common law and in this State before
the act was passed.

8. ———: ———: ———: **When She is Barred.** The wife has ten
years after disability of coverture is removed to bring suit in
ejectment for her lands for which while the marital relation ex-
isted her husband alone had the right to sue. The fact that he
was entitled to the possession and neglected to sue therefor, did

not compel her to sue within three years after her disability was removed. Nor does the fact that defendant, at the time her suit was brought, had been in actual adverse and continuous possession for ten years since her husband's right to sue for possession accrued, bar her action of ejectment, if brought within ten years after his death. Her husband being entitled to possession when the right of action accrued, the Statute of Limitations did not begin to run against her while she was a married woman, whether she lived separate and apart from him or not. [Distinguishing Wheelock v. Overshiner, 110 Mo. 100; Gray v. Yates, 67 Mo. 601; and Reed v. Painter, 145 Mo. 354.]

9. ———: ———: **Disability Removed: Married Woman: Minor: Three Years.** When real estate descends to a minor he has the immediate right to possession and his right of action in ejectment accrues then, and the three-year Statute of Limitation may be invoked against him, if he fails to sue within three years after he attains his majority and the action is otherwise barred; but the three-year statute cannot be invoked as a bar to a married woman's action of ejectment whose husband during her coverture was entitled to possession, for the simple reason that while coverture existed her right to possession, and hence her right of action, did not accrue. [Distinguishing Reed v. Painter, 145 Mo. 354.]

10. ———: ———: ———: **Wife Living Separate From Husband.** The fact that the wife at the date of her husband's death in 1893 was living separate and apart from him and had been for five years, did not impose on her the obligation to sue in ejectment for her lands to which her husband was entitled to possession, nor did it cause the Statute of Limitations to begin to run against her until after his death.

Appeal from Daviess Circuit Court.—*Hon. J. W. Alexander*, Judge.

AFFIRMED.

*Hicklin, Leopard & Hicklin* for appellant.

Plaintiff's suit having been brought more than ten years after the death of Mary McCully and more than three years after the death of David Graham, was barred by the Statute of Limitations, and the finding and judgment should have been for defendant. Sec. 4265, R. S. 1899, Wheelock v. Overshiner, 110 Mo. 100.

192 sup—2

*Boyd Dudley* and *Thos. A. Gaines* for respondent.

(1) Wheelock v. Overshiner, 110 Mo. 100, is the only case cited and relied upon as authority by appellant. While among other questions decided, it, in a measure, supports appellant's contention that the widow does not have full ten years after the removal of the disability of coverture in which to bring suit, yet, it seems to be a sporadic case, and, so far as prior and subsequent adjudications are concerned as to the question at bar, like the mule, without either "pride of ancestry or hope of posterity." Let us examine this case briefly. First. The question of the husband's marital right to the possession of his wife's land, was neither raised, discussed nor referred to in any manner. Second. The finding of the court (page 113) that the plaintiff had been in possession for more than ten years "after Mrs. Brittain's right of action accrued," was based solely on the fact, that he had, in fact, been in possession for more than ten years, without any discussion, consideration or reference to the questions as to when her right of action accrued, or whether she had a right of entry or possession while her husband was still living and coverture existed. It is clear that these questions, together with the question as to her husband's sole right of possession by virtue of his martial rights, were not called to the attention of the court and were overlooked. Third. The ruling of the court that she had only three years after the disability of coverture was removed by the death of her husband, in which to bring suit to recover, is based solely on the case of Gray v. Yates, 67 Mo. 601. In that case, the holding is, that a minor has only three years after his disability of minority is removed in which to bring suit. This involves an entirely different principle from that in the case at bar, for the reason that, where an estate descends or the right accrues to a minor, during minority, he has

the immediate right of entry and possession, while with a married woman, under the law as it existed at that time, if coverture exists, the right of entry or possession did not accrue until the disability of coverture was removed. The right of possession was in the husband alone. The right of entry and action, his alone. He alone had the right to sue in ejectment, and she had to wait until, by the providence of God or the benign decree of the court, the marital relation ceased and coverture ended. Under the law as it exists now, since the full emancipation of married women, she is the absolute master of her separate property, acquired by inheritance, gift or purchase. This law, however, has no retroactive effect, and under the law as it existed then, and which governs this case, like Moses of old, she was not permitted to enter the promised land, or taste the sweet fruits of her ownership. She could only go up into the "mountain of Nebo, to the top of Pisgah;" there to be shown all the land of Canaan—valley and plain—mountain and palm tree—even to the uttermost sea. And the law said to her, as the Lord said to Moses, "I have caused thee to see it with thine own eyes, but thou shalt not go over thither." As the Gray case, supra, was the sole basis for the ruling in the Overshiner case, and as it turned upon an entirely different principle, and as no other case existed announcing the same principle, the Overshiner case, was, as to the question at bar, wholly without authority. Since that opinion was rendered, seventy volumes have been added to the reported decisions of this court. Many cases have been passed upon, involving the same and similar legal propositions, and only twice has this case been referred to on this point. Once in the case of Reed v. Painter, 145 Mo. 354, wherein it was held that the wife had the right of action for injury done to her inheritance or the integrity of her fee simple title to her lands, and, again, in the case of Overshiner v. Brittain, 169 Mo. 353, on the question

of *res adjudicata*, but never, as sustaining the doctrine contended for by appellants in this case. Both before and since that case this court has held, on every occasion where the question was squarely presented, that the husband's right of possession prevented the married woman from having either right of possession or entry until coverture ceased and that she had ten years after her disability ceased in which to bring suit. Dyer v. Wittler, 89 Mo. 81; Smith v. Patterson, 95 Mo. 529; Bradley v. Railroad, 91 Mo. 498; Pim v. St. Louis, 122 Mo. 665; Hall v. French, 165 Mo. 440. (2) The law is well established in this State: First. That prior to the passage of the Married Woman's Act the husband's right of possession of his wife's land was a common law right, existing by virtue of the marital relation. Second. That it was a vested right and could not be taken away by the Married Woman's Act. Third. That the husband's right to possession was exclusive. Fourth. That the wife's right of action or entry was postponed until the death of her husband, and that she was not entitled to commence or maintain any action, and had no right of entry or possession so long as her husband lived and the marital relation continued. Lessee of Thompson's Heirs v. Green, 4 Oh. St. 216; Dyer v. Wittler, 89 Mo. 81; Leete v. Bank, 115 Mo. 184, and 141 Mo. 574; Flesh v. Lindsay, 115 Mo. 17; Arnold v. Willis, 128 Mo. 151; Barns v. Bullock, 129 Mo. 120; Smith v. White, 165 Mo. 596; Hall v. French, 165 Mo. 438; Vanata v. Johnson, 170 Mo. 274; Chew v. Kellar, 171 Mo. 223. And the fact that the husband and wife did not live together for a time before his death does not affect the common law right of the husband to the possession of the wife's property. Throckmorton v. Pence, 121 Mo. 58.

GANTT, J.—This is an ordinary petition in ejectment for an undivided one-eighteenth interest in the

northeast quarter of the southwest quarter and the northwest quarter of the southeast quarter of section twenty-two in township sixty of range twenty-nine, in Daviess county, Missouri.

Defendant pleads the ten-year Statute of Limitations, claiming actual, continuous, adverse, notorious, visible and exclusive possession of the premises sued for, for more than ten years before the commencement of this suit. Also a general denial of all matters in plaintiff's petition.

The reply consists merely of a general denial of new matter set up in defendant's answer.

On September 12, 1902, plaintiff by leave of court filed her petition and defendant entered his appearance, the cause continued, and on December 8, 1902, defendant filed answer. On December 12, 1902, this cause was submitted to the court, evidence heard and continued under advisement. And on the 22nd day of April, 1903, judgment was duly rendered for plaintiff for one-eighteenth of the land described in plaintiff's petition, and for one cent damages and for seventy-five cents monthly rents and profits; and on the same day defendant filed his motion for a new trial; which was one the same day, by agreement of the parties taken up and considered by the court and overruled. On the same day defendant made application for appeal to the Supreme Court of Missouri, which was granted, and defendant was allowed until and during the September term, 1903, of the court to file a bill of exceptions; and on the 16th day of September, 1903, the same being the ninth day of the September term, 1903, of said court, defendant filed his bill of exceptions, which was signed and sealed by the judge of the court and made a part of the record in this cause. The cause was submitted to the court on the following agreed statement of facts:

"It is admitted that Taylor McCully is the common source of title.

"That Mary McCully was the widow of Taylor McCully, and that Taylor McCully died in 1858.

"That his widow, Mary McCully, died in 1888.

"That Perry McCully was one of the six children of Taylor and Mary McCully.

"That Perry McCully was married to this plaintiff in 1846.

"That said Perry and this plaintiff by said marriage had three children, that is, Mary N., John and Samuel McCully, born after said marriage.

"That said Perry McCully died on the 5th day of May, 1862, leaving this plaintiff, his widow, and said three children as his sole heirs.

"That said John McCully died in 1865, and said Samuel McCully died in 1865, leaving as their heirs their mother, this plaintiff and their sister, the said Mary N.

"That after the death of the said Perry McCully plaintiff became the wife of David Graham on the—— day of ————, 1867.

"That said David Graham died on the ——day of April, 1893.

"That the interest of the plaintiff in the land in question, if any she has, is one-eighteenth, inherited from her two children, John and Samuel McCully.

"That the rental value of said land is $2 per acre per annum.

"That the plaintiff and her husband, David Graham, were at the date of his death living separate and apart and had been so living for five years, but were not divorced.

"That no issue was born of the marriage between plaintiff and said Graham.

"That the defendant and those under whom he claims have been in possession of the land in question claiming to own the same adversely, for more than ten years prior to the bringing of this suit.

"That the defendant had no notice of plaintiff's

claim to said land, or any interest therein, until the bringing of this suit the ——day of March, 1902.

"That the land in controversy, with other lands, was assigned to Mary McCully, as dower, and that she remained in possession thereof until her death."

This was all the evidence offered in the case that in any manner pertains to the question raised by this appeal. The finding and judgment was for the plaintiff. And afterwards on the 22nd day of April, 1903, the same being the ninth day of the April term, 1903, of said court, and within four days after the trial, defendant filed his motion for a new trial, which, omitting caption, is as follows:

"Now comes the defendant in the above-entitled cause and moves the court to set aside its finding and judgment therein and grant him a new trial for the following reasons: Because:

"1. The finding and judgment of the court is against the law and the evidence and against the law under the evidence.

"2. The finding and judgment of the court should have been against plaintiff instead of against defendant.

"3. The court erred in declaring the law as prayed for by plaintiff in declarations of law numbered. . . .

"4. The court admitted illegal and improper testimony offered by plaintiff.

"5. The court excluded legal and proper testimony offered by defendant."

Which said motion for a new trial was, by agreement of the parties, taken up and considered by the court on said 22nd day of April, 1903, and by the court overruled, to which action of the court in overruling said motion for a new trial, defendant by his counsel duly excepted at the time.

I. No declarations of law were asked or given, but as the case was submitted to the court upon an

agreed statement of facts, such agreed case occupies the same footing as a special verdict and it became the duty of the trial court to give judgment upon the facts so found or agreed upon and unless its conclusion as to the law upon the said facts was correct its judgment must be reversed. [Munford v. Wilson, 15 Mo. 540; Gage v. Gates, 62 Mo. 412; Rannells v. Isgrigg, 99 Mo. 19.]

II. The sole question involved in this case is whether the plaintiff's right of action was barred by the Statute of Limitation.

Mary McCully by virtue of the assignment of the premises in suit as dower was a life tenent therein. So long as she lived, the heirs of Taylor McCully, her husband, had no right of possession to the said lands, and she lived until 1888. In that year for the first time a right of possession accrued to the heirs, but at that time, the plaintiff herein was the wife of David Graham, and he by virtue of the marital relations, and not she, became entitled to the possession of the part of said lands which had descended to her from her two sons, John and Samuel, in right of their father, Perry.

David Graham did not die until 1893, and until his death, the plaintiff had no right to possession or entry or action. The sole question is whether she had ten years after the death of her said husband, David Graham, in which to bring her suit, or three years only. If she had ten years after her disability of coverture was removed by the death of her husband, then she can recover.

Section 4262, Revised Statutes 1899, provides that no action for the recovery of lands or for the possession thereof shall be commenced, had or maintained by any person whatever, unless it appear that the plaintiff, his ancestor, predecessor, grantor or other person under whom he claims was seized or possessed of the premises in question within ten years before the commencement of such action or suit.

In Dyer v. Wittler, 89 Mo. l. c. 86, it was said: "By common consent the proper construction of this statute is, that notwithstanding the sweeping language of the said section, no person is embraced in or contemplated by the first or any other section of that statute, except such as have a *present existing* right to commence an action or make an entry." [Dyer v. Brannock, 66 Mo. 422; Johns v. Fenton, 88 Mo. 64; Harris v. Ross, 86 Mo. 89.]

And this statement of doctrine has subsequently been reaffirmed in Howell v. Jump, 140 Mo. 441; Shumate v. Snyder, 140 Mo. 77; and Hall v. French, 165 Mo. 430. In the last-mentioned case it is said: "No court has ever held that a right can be barred by limitation before the law permits the owner to come into court, for such a decision would be a solecism, a denial of due process of law, for it would not give the party 'a day in court.' " The first fact then to be determined, when the bar of the Statute of Limitations is interposed in a case, is, when did the cause of action accrue, and that is the vital question in this case, and the one over which the contest was waged in the circuit court. On the part of the plaintiff it is insisted that as it was admitted that Mary McCully, the widow of Taylor McCully, the common source of title to the land in question, held an estate for life by virtue of the assignment of her dower therein until she died in 1888, and at that time the plaintiff herein was a married woman, the wife of David Graham by virtue of his marital relation to the plaintiff became and was entitled to the possession of her interest in said lands, and plaintiff had no right to possession, entry or action then existing, nor until his death in 1893, and that when he died she had ten years after his death to bring her action. Whereas the defendant, upon the other hand, insists that, conceding that at common law the husband, whether as tenant by the curtesy or by marital right only was entitled to the exclusive right

to the possession of the wife's lands during coverture, the act of the Legislature (now sec. 4339, R. S. 1899), first passed in 1865, so changed the common law right of the husband as to give the wife immediate right of possession, and that, therefore, upon the death of her mother-in-law in 1888, Mrs. Graham became entitled to the possession of her interest in the lands in suit and the cause of action for the possession thereof accrued to her, and the statute began to run against her in 1888, and was not deferred until 1893 at the death of her husband.

In Valle v. Obenhause, 62 Mo. l. c. 85, it was ruled: ''The husband is said to be jointly seized of his wife's estate, and during the existence of coverture he is not tenant by the curtesy, but only seized by right of his wife, and if there is a disseizin, it is of the joint estate, and they must jointly bring an action to recover the possession. Under this view of the title of husband and wife in the lands of the wife, the Statute of Limitation will begin to run from the date of the disseizin against both.'' But in Dyer v. Wittler, 89 Mo. 81, the decision in Valle v. Obenhause was overruled, and it was held that the right of possession and the right to sue therefor was by the operation of the marital law then existing transferred to the husband during his life, and consequently no right of action accrued to the wife or her heirs until her husband's death, and in such case, the wife was not within the purview of either the ten or twenty-four year provisions of the Statute of Limitations, since she was not, in the language of the latter section, entitled under the law to the possession and *ex necessitate* was not entitled to the right of action. That opinion has never been overruled, criticised or distinguished by any decision of this court since its announcement, but has been uniformly followed and approved.

In Bradley v. Railroad, 91 Mo. l. c. 498, BLACK, J., for the court, said: ''No cause of action accrued

to her until her husband's death, and until that event the Statute of Limitations did not commence to run against her or her heirs. [Dyer v. Brannock, 66 Mo. 391.] He died in 1875, and the statute commenced to run at that time, but the period of ten years did not elapse between that date and the commencement of this suit, so that it is clear that the Statute of Limitations constitutes no defense to this action.''

In Pim v. St. Louis, 122 Mo. l. c. 665, BURGESS, J., said: ''If there was no actual possession taken of the land until after her marriage to her husband in 1865, her action was not barred, because it was brought within ten years after his death. [Bradley v. Railroad, 91 Mo. 493; Dyer v. Wittler, 89 Mo. 81.]''

See, also, Smith v. Patterson, 95 Mo. l. c. 529; Hall v. French, 165 Mo. l. c. 440.

It is essential to keep in view that these decisions were made while the act of 1865, section 4339, Revised Statutes 1899, was in force. Since the passage of the act of 1865, above noted, this court has uniformly ruled that the husband was the proper party to sue in ejectment for the possession of the wife's land and his right so to do was not affected by the act of 1865, which provided that the rents, issues and products of the real estate of any married woman should during coverture be exempt from attachment or levy or execution for the sole debts of her husband, and any conveyance made during coverture by said husband of such rents, issues and products or of any interest in such real estate, should not be valid unless the same be by deed executed by the wife jointly with her husband, and acknowledged by her in the manner then provided by husband and wife.

In Arnold v. Willis, 128 Mo. 149, it was pointed out that by the amendment of the act of 1865 in 1889, section 4339 was for the first time changed so as to confer upon the wife the absolute right to all of her real estate so that thereafter she was entitled to sue

for the possession thereof without joining her husband in the suit with her. In that case it was held that by section 6869, Revised Statutes 1889, the right of the husband to the possession of land belonging to the wife was materially changed and he was completely deprived of all right to the possession and control of the increase and profits thereof. It was significantly added: "But the fact that the right of plaintiff's wife to sue in her own name for her separate property was conferred upon her by the Revised Statutes of 1889, did not deprive him [her husband] of a right already vested, that is, the right to the possession of the lots, from and after the death of Mrs. Ricker, at which time the right accrued. [Leete v. Bank, 115 Mo. 184.]" In Bains v. Bullock, 129 Mo. l. c. 119, Judge MACFARLANE, speaking for this court, said: "These rights he had at common law, though the legal estate was vested in the wife. So it has been uniformly ruled by this court, before the revision of 1889, that the husband is the only proper and necessary party to maintain an action to recover possession of the land of the wife when she holds a legal, as distinguished from the separate or equitable, estate therein. [Peck v. Lockridge, 97 Mo. 558; Gray v. Dryden, 79 Mo. 106; Cooper v. Ord, 60 Mo. 420.]" See also Vanata v. Johnson, 170 Mo. 269. This last-cited case reaffirms Arnold v. Willis, 128 Mo. 149, and it must be held in view of this unbroken line of authority that the contention of the defendant that since the passage of the act of 1865 and prior to 1889 the wife had the right of possession during coverture, is untenable.

Another contention of the defendant along this line is that Dyer v. Wittler only deprived the wife of the right of possession when the husband had an estate by the curtesy initiate. In Vanata v. Johnson, 170 Mo. 269, it was correctly ruled that the exclusive right of the husband to the possession of his wife's lands during coverture "arose from the marital relation,

and was not in any sense a right of curtesy, initiate or otherwise, and did not depend upon the birth of a child." And it is clear that Dyer v. Wittler, 89 Mo. 81, is not to be confined as defendant contends.

The right of David Graham to the possession of the lands in suit as the husband of plaintiff accrued to him prior to the passage of the act of 1889, and was a vested right which could not be taken away from him by the Married Woman's act of 1889. [Arnold v. Willis, 128 Mo. 149; Vanata v. Johnson, 170 Mo. 269.] The Married Woman's act of 1889 (sec. 6869 Revised Statutes 1889), was prospective, and as to all property acquired by the husband before the passage of that act, her husband's rights remained as they were at common law, and in this State, before the act was passed. [Vanata v. Johnson, supra.]

Without further discussion, then, it must be held to be settled law in this State that the plaintiff had no right of possession at the date of the death of Mrs. McCully and the termination of her dower estate in the lands in suit, but that the right of possession and the right of action devolved upon her husband David Graham and remained in him until his death in 1893, at which time the plaintiff's right of action for the first time accrued.

The only remaining question then is, did she have ten years or only three years after the death of her husband within which to bring her action for the possession? That she had ten years within which to bring her action after it accrued in 1893, we think there can be no doubt whatever. On every occasion where the case was squarely presented that the husband's right of possession prevented a married woman from having either right of possession or entry until coverture ceased, it has been ruled by this court that she had ten years after her disability ceased in which to bring her action. [Dyer v. Wittler, 89 Mo. 81; Smith v. Patter-

son, 95 Mo. 529; Bradley v. Railroad, 91 Mo. 498; Pim v. St. Louis, 122 Mo. 665.]

The only case cited to the contrary by the defendant is that of Wheelock v. Overshiner, 110 Mo. 100. A careful examination will show it was a personal action to recover damages for a breach of covenants of warranty and was not an action of ejectment for real estate. The question of the husband's marital right to the possession of the lands warranted, was neither discussed nor referred to in any manner, either in the briefs of counsel or the decision of the court. It is true that in the last paragraph of the opinion, the court does refer to the time when the ejectment suit was brought by Mrs. Brittain, the judgment in which resulted in her favor, and was made the basis of the action on Richards' covenants of warranty, and says, "So that, from the evidence as it appears in the record, when that suit was brought, the plaintiff and his warrantor had been in the peaceful, continuous, adverse possession, for more than *ten years after Mrs. Brittain's right of action accrued,* and more than three years after her disability of coverture had been removed, by the death of her husband—a possession which gave him a title paramount to that of Mrs. Brittain, and which should have barred her action of ejectment. [Gray v. Yates, 67 Mo. 601.]" It is obvious that the court assumed that Mrs. Brittain's action was brought *more than ten years after her cause of action accrued,* and therefore, she had ten years within which to bring her action after her right of action accrued. Grant the premise that this conclusion was correct, that case is no authority for the position of defendant in this case that the plaintiff was bound to bring her action *before it accrued,* and within three years after her disability was removed, without regard to the time when her cause of action accrued. No effort was made in that case to overrule Dyer v. Wittler, 89 Mo. 81, or any of the numerous cases which followed it. If it was

meant to say that the statute began to run against her while she was a married woman, it is obviously in conflict with all the said preceding cases, as we have already shown, and with all the subsequent rulings of this court both in banc and both divisions. The reference to Gray v. Yates, 67 Mo. 601, to sustain the statement in regard to three years after her disability had been removed is equally unfortunate, in this, that when an estate descends or the right accrues to a minor, he has the immediate right of entry and possession, and his action accrues then, while with a married woman under the law as it existed then, and as in this case when Mrs. Mary McCully died, the right of possession or action did not accrue during the coverture, and only accrued when the disability was removed. Gray v. Yates, was not authority for the ruling in Wheelock v. Overshiner. In Reed v. Painter, 145 Mo. 354-355, the Wheelock case was cited, but a reference to the Reed-Painter case will show that it was based upon the proposition that a cause of action accrued to Mrs. Painter during coverture for the fraudulent act of her husband in depriving her of her fee simple to her lands. [Walter v. Walter, 48 Mo. 140.] The case was correctly decided and distinguished from Dyer v. Wittler, but the reference to Wheelock v. Overshiner was unfortunate, as it added nothing to the decision. Nothing in Overshiner v. Britton, 169 Mo. 353, gives countenance to the proposition that the wife during coverture had a right of action for possession of her lands, in which she has only a legal estate, or that she had not ten years after her cause of action accrued within which to bring her suit if disseized.

In view of the decisions beginning with Dyer v. Wittler, 89 Mo. 81, down to the present, it must be apparent that Wheelock v. Overshiner, 110 Mo. 100, has never been treated by this court as overruling or impairing the established law on this question.

It remains to notice only one other fact stated in the agreed case, to-wit, that "plaintiff and David Graham, her husband, at the date of his death were living separate and apart and had been for five years, but were not divorced." This fact, even if it had amounted to such an abandonment as to authorize her to sue, did not impose an obligation on her to sue. She was still under coverture and was not compelled to sue and the statute did not begin to run against her, on that account. [Throckmorton v. Pence, 121 Mo. l. c. 58-59.]

The judgment of the circuit court was right and it is affirmed.

*Burgess, P. J.,* and *Fox, J.,* concur.